# EXHIBIT 2

eFiled
7/11/2025 3:41:53 PM
Superior Court
of the District of Columbia

# THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## Civil Division

| | |
|---|---|
| URIEL CHARLAP, on behalf of himself and all others similarly situated,<br><br>10937 Pebble Run Drive,<br>Silver Spring, MD 20902<br><br>*Plaintiff,*<br><br>v.<br><br>GEORGETOWN UNIVERSITY LAW CENTER,<br><br>600 New Jersey Ave NW,<br>Washington, DC 20001,<br><br>*Defendant.* | Civil Action No.:    2025-CAB-004520<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Uriel Charlap brings this Complaint ("Complaint") on behalf of himself and all others similarly situated against Georgetown University Law Center ("Defendant," or "Georgetown Law"), and alleges as follows:

## PRELIMINARY STATEMENT

1.     Georgetown Law was founded in 1870 and has offered a Doctor of Juridical Science ("S.J.D.") to the public since the late 19th century.  In 2022, Defendant paused its S.J.D. program.  To this day, Defendant has not resumed the program.  More recently, in September 2024, Professor Carlos Manuel Vázquez, Associate Dean for Graduate and International Programs, informed Plaintiff that the program's pause had become an indefinite suspension, with no certainty as to when or if it would resume.

1

2.      This action does not assert that Georgetown Law cannot terminate its S.J.D. program.  Like any academic institution, Georgetown Law has the autonomy and academic freedom to alter and adjust its academic programs and curriculum.  However, by suspending its S.J.D. program indefinitely without notice and without a gradual process, Defendant breaches its legal commitments and responsibilities to its students, who relied on the program's operation and entered into contracts with Defendant on the condition and the assumption that applying to the S.J.D. program would remain an available option.

3.      Setting aside the breach of commitment to its students, Georgetown Law has not publicly announced that it has indefinitely suspended its S.J.D. program.  Instead, Defendant continues to advertise and publish its S.J.D. program as if it is operational and active, thereby misleading the public and its students.

4.      Why is Defendant still advertising its S.J.D. program, even though the program is not active?  It is believed that Georgetown Law continues to advertise as if the S.J.D. program is operational, in order to attract Master of Laws ("LL.M.") students interested in an academic career who view the LL.M. as a steppingstone to qualifying for the S.J.D. program.  Defendant knows that if potential LL.M. applicants realize Defendant does not have an S.J.D. program, there will be fewer applications and fewer students enrolling in its LL.M. program, as these two programs are intertwined and linked for students pursuing academic careers.

5.      Furthermore, it is important for the prestige of Georgetown Law to maintain the perception that it offers an S.J.D. program.  Not all law schools in the U.S. have an S.J.D. program, but the most prestigious ones do.  The absence of an S.J.D. program could indicate the decline in the status of Defendant.

6. This complaint asserts claims related to misrepresentations made by Defendant to its students and potential applicants to their detriment, false advertising by Defendant, and Defendant's breach of its agreement with its students.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to D.C. Code § 11-921.

8. Venue in this judicial district is appropriate because Defendant is located and conducting activities in the District of Columbia, and because the acts and omissions giving rise to this action occurred in the District of Columbia.

## PARTIES

9. Plaintiff Uriel Charlap is an adult resident of Maryland. He attended Georgetown Law in the fall of 2018 as an exchange student and earned an LL.M. degree from the same institution in May 2022.

10. Georgetown Law is the law school of Georgetown University, a private research university located in Washington, D.C. It was established in 1870 and is the largest law school in the United States, with over 2,000 students enrolled.

## STATEMENT OF FACTS

11. Georgetown Law is a top-tier law school located in Washington, D.C., renowned for its academic excellence, global outlook, and proximity to the heart of the U.S. government and legal institutions. As part of Georgetown University, Georgetown Law offers a wide range of programs, including Juris Doctor ("J.D."), Master of Laws ("LL.M."), and Doctor of Juridical Science ("S.J.D.") degrees.

12. J.D. is the primary professional law degree in the United States, a prerequisite to

3

practice law in all 50 states.  It typically takes three years of full-time study to complete and is designed to provide a comprehensive foundation in American law.  After earning a J.D., graduates are eligible to sit for state bar exams to become licensed attorneys.

13.    LL.M. is a postgraduate law degree designed for individuals who already hold a first law degree.  The LL.M. usually takes one year of full-time study and allows lawyers to specialize in a specific area of law, such as international, tax, human rights, or intellectual property law.  The LL.M. is commonly pursued by foreign-trained lawyers who want to gain expertise in U.S. law.

14.    S.J.D. degree (in some schools referred to as J.S.D.) is the highest academic degree in law, primarily intended for individuals who wish to pursue careers in legal scholarship, research, and academia.  It is often seen as the law equivalent of a Ph.D. The program is research-focused, with students working closely with a faculty supervisor to produce a significant dissertation that offers original insights to the field of law.

15.    The S.J.D. degree is almost exclusively pursued by foreign-trained lawyers who wish to become law professors or legal scholars.   In many countries around the world, a Ph.D. in law or its U.S. equivalent—the S.J.D.—is necessary to secure research or teaching roles at law faculties and law schools.  In numerous countries, including Plaintiff's home country, most law professors earn their S.J.D. from top U.S. law schools.

16.    To be admitted to an S.J.D. program, candidates typically must already hold an LL.M. earned at an American law school.  For instance, Georgetown Law states on its website that "The S.J.D. program is only open to applicants who currently possess an LL.M. degree from the United States."

17. Since an LL.M. degree is necessary for admission to an S.J.D. program, many foreign-trained lawyers view obtaining an LL.M. as a steppingstone toward pursuing an S.J.D. degree rather than as a standalone credential.

18. Not all law schools in the United States offer S.J.D. programs, but the most prestigious institutions do. These elite schools typically admit only those students who have already earned an LL.M. from their own programs. For instance, Yale and Harvard exclusively consider their own LL.M. graduates for their S.J.D. programs.

19. Even the law schools that accept students with LL.M. degrees from outside institutions, in practice, predominantly admit their own students. This is because the American S.J.D. program is designed around a close, mentoring relationship between supervisor and students, making personal connections with faculty absolutely essential for success. Building strong relationships with faculty while earning an LL.M. is, therefore, vital, as these relationships significantly influence admission to S.J.D. programs. For example, Georgetown Law historically admits its own LL.M. students into its S.J.D. program, underscoring the importance of familiarity and trusted mentorship in securing a place in its program. Ultimately, establishing meaningful connections within a school's community is crucial for gaining access to its most prestigious advanced research opportunities.

20. Additionally, for practical reasons, students often enroll in both LL.M. and S.J.D. degrees at the same institution. LL.M. students are typically foreign-trained lawyers who come to the U.S. to pursue their academic goals. Many of these students already have spouses and children and do not wish to live in one city for their LL.M. degree and uproot their families to relocate to another city to pursue their S.J.D. degree just one year later. Therefore, they expect to

5

complete both their LL.M. and S.J.D. at the same institution, leading them to seek out schools that offer both degrees.

21. In 2022, without informing its LL.M. students, Defendant unexpectedly suspended its S.J.D. program and did not admit students for the 2022-2023 academic year. When Defendant administrators were asked about this unexpected suspension, they implied it was only a one-year pause. However, to date, Defendant has not resumed its program.

22. Yet, since then, Georgetown Law, through its website and publications, continues to present itself as operating an active S.J.D. program and presents that applicants are being admitted.

23. Since the suspension, Georgetown Law's website, under the heading S.J.D. Degree (Home / Academics / Graduate Programs / Search by degree type / S.J.D. Degree) states that "The Doctor of Juridical Science (S.J.D.) is the highest degree offered by Georgetown." Screenshots from the Georgetown Law website page "S.J.D. Degree" from various dates over a three-year span, from January 2022 through January 2025, are attached as Exhibit A.

24. In Defendant's most recent academic handbook, the Georgetown Law Student Handbook of Academic Policies ("Academic Handbook") for 2024–2025, known as the Georgetown Law Bulletin prior to 2013–2014 ("2024–2025 Academic Handbook"), last updated on January 13, 2025, and as of the date of Complaint is available on Defendant's website (Home / Academics / Academic Resources / Registrar / Student Handbook), Georgetown Law lists the Doctor of Juridical Science (S.J.D.) under the Graduate Programs section, indicating that the degree is offered by the school. Page 40 of the 2024–2025 Academic Handbook, attached as Exhibit B. A screenshot taken on July 10, 2025, of the webpage

6

displaying the 2024–2025 Academic Handbook is attached as Exhibit C.

25.     The 2024–2025 Academic Handbook lists Tiffany Joly as the academic advisor for the Doctor of Juridical Science (S.J.D.) program and provides information about the degree requirements, while stating that "The Doctor of Juridical Science (S.J.D.) is the highest degree offered by Georgetown University Law Center."  Page 41 of the 2024–2025 Academic Handbook, attached as Exhibit D.

26.     In the 2024–2025 Academic Handbook, Georgetown Law advertises the first-year S.J.D. tuition as $79,864.00,[1] creating the impression that the S.J.D. program accepted new enrollees for the 2024–2025 academic year.  Page 181 of the 2024–2025 Academic Handbook, attached as Exhibit E.

27.     To support the appearance of having an S.J.D. program when it does not, Georgetown Law even updated its Academic Handbook to reflect an increase in the first-year tuition for S.J.D. students for the 2024–2025 academic year compared to previous years, despite there being no application or admission process for the 2024–2025 S.J.D. program.  Specifically, the academic handbook for the 2022–2023 academic year lists the first-year tuition for an S.J.D. student as $72,170.00, which, as mentioned above, increased to $79,864.00 this year.  Page 177 of the Georgetown Law Student Handbook of Academic Policies for 2022–2023 is attached hereto as Exhibit F.

28.     The indefinite suspension of Defendant's S.J.D. program without prior notice to its LL.M. students, while falsely representing that the program is still active, has misled and significantly harmed and disadvantaged its LL.M. students, particularly those aspiring to pursue

---

[1] The 2024–2025 Academic Handbook states that S.J.D. second-year tuition is $12,984.00 per semester, while the third, fourth, and fifth years are each $3,247.00 per semester.

academic careers, Plaintiff included.

29. The deception regarding the indefinite suspension of Defendant's S.J.D. program has significantly hindered the academic and career goals of many LL.M. students, including Plaintiff.

30. The result of the deception concerning the indefinite suspension of the S.J.D. program has been damaging to the future earnings potential of many LL.M. students, including Plaintiff.

31. Defendant's indefinite suspension of its S.J.D. program has prevented its LL.M. students from pursuing an S.J.D. at other leading law schools, as they typically only admit their own LL.M. students.

32. Defendant's indefinite suspension of its S.J.D. program has also hindered its LL.M. students' ability to establish the necessary personal relationships with faculty members for finding an S.J.D. supervisor in other law schools.

33. Defendant's indefinite suspension of its S.J.D. program has notable financial consequences. Even if Defendant's LL.M. students can pursue a Ph.D. or S.J.D. in their home countries, they would still be at a disadvantage compared to S.J.D. degree holders from American law schools in terms of competitiveness for legal research and teaching positions. The delay in beginning their academic careers caused by this pause has also affected their potential earnings.

34. In normal circumstances, when schools plan to eliminate a long-standing program that many enrolled students and prospective applicants depend on, based on the school's representations, they typically notify people in advance of their plans.

8

35.     Additionally, Defendant should have grandfathered its S.J.D. program for students enrolled in their LL.M. program.  To elaborate, Defendant should have maintained the program for current LL.M. students who relied on the S.J.D. option.  These students, Plaintiff among them, would not have enrolled in Defendant's LL.M. program had they known that the S.J.D. program would be abolished.  It also should have informed prospective LL.M. students about the coming suspension of its S.J.D. program, allowing them to explore other LL.M. programs that offer an S.J.D. track.

36.     The above-suggested measures would have been taken by any other academic institution.  For example, Rutgers University issued a Policy on the Suspension or Discontinuance of Programs, Departments, and Centers ("Rutgers Policy"), which can be found on the Rutgers website.[2]

37.     Rutgers Policy states on page 1 that "Decisions to alter significantly or to abolish programs must be equally carefully made because they also affect […] students, and the integrity of the University.

38.     On page two of Rutgers Policy provides that "students of any program considered for review for suspension or discontinuance shall be kept fully informed about that action, policies and procedures governing suspension and discontinuance, and rights of those involved." It adds that "suspending and discontinuing academic programs shall include adequate safeguards for […] students, to include, but not be limited to, adequate notice, […] due process, rights to a hearing and appeal, relocation within the University, assistance in retraining and placement

---

[2] *Policy on the Suspension or Discontinuance of Programs, Departments, and Centers*, RUTGERS UNIVERSITY OFFICE OF INSTITUTIONAL RESEARCH AND DECISION SUPPORT, https://oirap.rutgers.edu/msa/Documents/06-07-Policy-Suspension-or-Discontinuance-of-Prog-Depart-Ctrs.pdf (last visited July 10, 2025).

outside the University."

39.    Rutgers Policy, on page 6, provides that "affirmative action consideration in implementation of suspension or discontinuance of programs shall be of major importance. Every effort shall be made to minimize the impact of such actions on […] students."  It further adds that "the termination of a program will be phased over a reasonable period of time."

40.    Another example is New York University's Procedures for Termination or Reorganization of Academic Programs ("NYU Policy"), which can be found on the New York University website.[3]  New York University commits to following specific procedures when proposing the discontinuance or reorganization of a particular program.  The entire process must be reviewed by several bodies, including the President of the Student Council of the affected school.  Additionally, the NYU Policy outlines a transparent process known to all involved parties, including encouraging members of the New York University community to provide additional information and opinions, either orally or in writing.

41.    Instead of being transparent, notifying its students and grandfathering its S.J.D. program, Defendant did not notify anyone of the suspension of its S.J.D. program, nor grandfather the program for its LL.M. students who intended to apply to its S.J.D. program.

42.    Moreover, Defendant continues to advertise the program, creating the impression that it is still active (or at least soon to be active), thereby misleading incoming and former LL.M. students as well as the public.  The false advertisement fraudulently induces incoming and prospective students to enroll in Defendant's LL.M. program, as enrollment in the LL.M.

---

[3] *Procedures for Termination or Reorganization of Academic Programs,* NEW YORK UNIVERSITY, https://www.nyu.edu/about/policies-guidelines-compliance/policies-and-guidelines/procedures-for-termination-or-reorganization-of-academic-programs.html (last visited July 10, 2025).

10

program is a prerequisite for applying to the S.J.D. program.

## FACTS RELEVANT INDIVIDUALLY TO PLAINTIFF

43.    In the fall of 2018, Plaintiff enrolled at Georgetown Law as an exchange student coming from the Hebrew University Faculty of Law.

44.    At the beginning of the semester, during orientation week, Plaintiff asked Defendant's administrators and academic advisors about academic programs primarily designed for foreign lawyers.    Plaintiff expressed interest in earning an S.J.D. degree because he was eager to pursue an academic career.

45.    One of the administrators and academic advisors told Plaintiff that to apply for the S.J.D. program at Georgetown Law, he would first need to earn an LL.M. degree, as that is a prerequisite for the S.J.D.

46.    On October 4, 2020, Plaintiff applied to the LL.M. program at Georgetown Law.

47.    In Plaintiff's application, Plaintiff stated that he is interested in Defendant's LL.M. program in order to "hone my academic capabilities, develop my credentials as a qualified researcher, and ultimately integrate in the global academic community."

48.    Unlike other LL.M. applicants who are motivated to enroll in the LL.M. program to become eligible for admittance to the New York Bar and to enter the U.S. legal market, Plaintiff was already eligible to take the New York Bar Exam because he had earned an LL.B. degree from a common law country.    Therefore, obtaining an LL.M. degree was not for this purpose.    Rather, the purpose was to be eligible to earn an S.J.D. degree at Georgetown Law.

49.    On April 16, 2021, Plaintiff, along with other prospective LL.M. students, was invited to a Zoom event called "SJD Information Session: For LL.M. Students interested in

11

Pursuing an SJD."  At the event, Professor Alexa Freeman, Director of the S.J.D. Program, and Professor Caryn Voland, Assistant Dean for Graduate Admissions, presented the S.J.D. program and its application process.

50.    During the S.J.D. Information Session, Professors Alexa Freeman and Caryn Voland provided an overview of the S.J.D. program and explained the application process. Plaintiff personally inquired about how to best utilize the LL.M. year to prepare for the S.J.D. program.

51.    In response, Professor Alexa Freeman advised Plaintiff to focus on his area of scholarly interest and to participate in seminars to gain experience in writing seminar papers, as this would better position Plaintiff for the S.J.D. program.

52.    In the S.J.D. Information Session, while referring to the S.J.D. program, Professor Freeman emphasized "that when you have developed a really close relationship with somebody on the faculty during your one or two years in the LL.M. program, and that person really thinks that you've got a great idea for your dissertation and wants to support you, then, of course, take that connection up.  That is valuable."

53.    Plaintiff matriculated into the LL.M. program in August 2021.

54.    Given Plaintiff's academic goals and his aspiration to enroll in the S.J.D. program, Plaintiff followed Professor Freeman's advice.  Plaintiff took three Seminars and enrolled in Advanced Scholarly Writing.  Plaintiff also broadened his academic knowledge by taking various courses relevant to the academic study of law and forming personal connections with Georgetown Law faculty.  Unlike other LL.M. students who are interested in law firm internships and externships, Plaintiff focused his efforts on the academic arena and worked as a

research assistant for renowned professors in the law school.

55.    In January 2022, as Plaintiff planned to apply for the S.J.D. program in the Fall of 2022, Plaintiff reached out to Professors Alexa Freeman and Caryn Voland to inquire about the possibility of deferring admission to the Fall of 2023 if Plaintiff were to receive an offer. Professor Voland advised Plaintiff that while it was possible to defer, it would be better to postpone Plaintiff's application to the following year.

56.    Consequently, Plaintiff decided to follow Professor Voland's recommendation and postponed his application.

57.    In the Fall of 2022, as Plaintiff was preparing his application papers for the S.J.D. program of the academic year of 2023–2024, he surveyed the S.J.D. program information pages on Defendant's website.

58.    The website, then and now, offers a wealth of information about the program, giving the reader the impression that Defendant's S.J.D. program is active, operational, and welcoming applicants.

59.    Subsequently, Plaintiff contacted Professor Alexa Freeman to inquire about the application to the S.J.D. program.

60.    On February 3, 2023, Professor Alexa Freeman informed Plaintiff that the S.J.D. program, currently run by her and Robin West, would be pausing for the upcoming application cycle due to their retirements scheduled for June 2024. Professor Freeman expressed confidence that the S.J.D. program would resume in some form the following year, stating, "I am confident that the degree itself will be offered." Therefore, in the meantime until the program resumes, she encouraged Plaintiff "to talk to faculty about mentoring or supervising [...] down the road."

61.    Plaintiff courteously expressed his gratitude to Professor Alexa Freeman and requested a meeting to discuss the status of the S.J.D. program.  However, she declined his request.

62.    On February 10, 2023, Plaintiff contacted Professor Caryn Voland to inquire about the status of the S.J.D. program.  She confirmed that Defendant's administration is exploring different models for continuing the S.J.D. program, and she approved Professor Freeman's advice to ask faculty members about the possibility of being Plaintiff's future academic supervisor.

63.    In September 2023, based on his observation that the Georgetown Law website continued to maintain that there was an active S.J.D. program, Plaintiff inquired again with Professor Voland about how to apply for the program for the 2024–2025 academic year.

64.    On October 26, 2023, Professor Voland informed Plaintiff that Georgetown Law "decided to pause the admissions again this year."  In Plaintiff's follow-up email, Plaintiff expressed concerns about the unfairness of the situation and asked to meet with someone from Defendant's administration to "find a solution for LLM students who enroll in Georgetown Law while relying on the existence of the SJD program."

65.    Professor Voland responded by saying that it is possible that an "updated plan will be posted on our website before the end of this academic year," while ignoring Plaintiff's suggestion for a meeting to rectify the injustice.

66.    The following year, on June 30, 2024, Plaintiff inquired again with Professor Voland regarding applying to the S.J.D. program, as he had noticed that the Georgetown Law website had consistently listed the program as active.  Plaintiff again requested a meeting with

14

her.

67.     Professor Voland responded by saying that "there has been no final decision about the program's structure going forward," while again ignoring Plaintiff's request to meet.

68.     Since Professor Voland has ignored Plaintiff's request to meet, on September 22, 2024, Plaintiff communicated with Professor Carlos Manuel Vázquez, Associate Dean for Graduate and International Programs, requesting to be enrolled as an S.J.D. student and, if not, to receive a refund of Plaintiff's LL.M. tuition and compensation.  Plaintiff added that he was willing to meet and engage in conversation.

69.     On October 16, 2024, Professor Vázquez responded that the S.J.D. program is "not currently accepting applications for Fall 2025 […] should Georgetown begin accepting new applicants to our SJD program, you would be welcome to apply at that time," essentially admitting that it is unknown whether the S.J.D. program will ever resume

70.     On November 17, 2024, Plaintiff reached out to Dean William Treanor, delivering the same message previously communicated to Professor Vázquez.  However, Dean Treanor did not respond.

71.     Although the program has been on hold for three consecutive years, the Georgetown Law website continues to display the S.J.D. section, suggesting that the program is still active or will soon be active, thereby misleading and disadvantaging Plaintiff by giving the false impression that the program will resume shortly.

## CAUSES OF ACTION

### COUNT I:
### Fraudulent Misrepresentation

72.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

73.     Defendant's actions and omissions give rise to a fraudulent misrepresentation cause of action.

74.     On several occasions, Defendant, through its administrators and publications, falsely misrepresented to Plaintiff and the general public that it was operating an S.J.D. program even though, upon information and belief, Defendant has already decided that the S.J.D. program was going to be put on hold in the near future because of the then-pending retirements of key S.J.D. program directors.

75.     Accordingly, Plaintiff was misled into believing that enrolling in the LL.M. program would allow him to apply to the S.J.D. program after earning its LL.M. degree, leading him to decide not to apply or enroll in other LL.M. programs across the United States.  Had he known that Defendant would suspend its S.J.D. program, he would never have enrolled in its LL.M. program.

76.     In 2022, Defendant, through its administrators, advised Plaintiff to postpone its application to the S.J.D. program while falsely misrepresenting to Plaintiff that he would be able to apply to the S.J.D. program for the 2023–2024 academic year, although, upon information and belief, Defendant knew at the time that the S.J.D. program was about to be paused.

77.     Accordingly, in 2022, Plaintiff, while relying on the representations above, was misled into believing that he could postpone his application to the S.J.D. program for a year, and the opportunity to apply would still be available to him.  Had he known that Defendant would

16

suspend its S.J.D. program and that no applications for the 2023-2024 cycle would be accepted, Plaintiff would never have postponed his application to the S.J.D. program.

78.    After notifying Plaintiff that the program had been paused, on several occasions, Defendant, through its administrators, falsely misrepresented to Plaintiff that the pause of the S.J.D. would be short lived and that Plaintiff would be able to apply to the S.J.D. program the following year, although, upon information and belief, Defendant knew at the time that the S.J.D. program had been indefinitely suspended.

79.    Moreover, the consistent publications on the website and academic handbook made by Georgetown Law, which represented that it still has an S.J.D. program, misled Plaintiff to believe that the pause in the program would be only for one year.  Only in October 2024 was Plaintiff informed by Professor Vázquez that the program had been indefinitely suspended and might never be resumed.

80.     Accordingly, from the beginning of 2023 through September 2024, Plaintiff, relying on the representations above, was misled into believing the S.J.D. program would resume soon and that he could apply to it in a short time.  Had Plaintiff known that the program was, in fact, indefinitely suspended, he would have pursued other available opportunities, including opportunities that were offered to him and which Plaintiff rejected, believing that he would be able to apply to Defendant's S.J.D. program soon when it was resumed.

81.    Defendant should not have conveyed false information to Plaintiff.  Alternatively, even if Defendant did not know at the time that the information conveyed to Plaintiff was false, once it became aware that the information was no longer accurate, Defendant, through its administrators, should have notified Plaintiff that the circumstances had changed and that the

17

S.J.D. program had been suspended indefinitely.

82.    Instead, Defendant, to date, still spreads false information through its website and publications, representing that its S.J.D. program is still active.

83.    More broadly, Defendant made false representations to its students, former students, potential applicants, and the general public, which they relied on to their detriment.

84.    Defendant, on its website and other publications, as well as at events and in oral conversations, represented, and still represents, that it has an S.J.D. program, even though it has suspended that program.  Because of this representation, many applicants have applied to its LL.M. program under the assumption that an avenue to apply to the S.J.D. program would be available to them.  Had they known that the S.J.D. program is not operational, they would not have applied and enrolled in Defendant's LL.M. program.

85.    At best, Defendant presented half-truths, which, many times, is worse than a lie. Defendant presented information on its website about an S.J.D. program but failed to disclose that the program is indefinitely suspended.

86.    The true status of the S.J.D. program is a material fact playing a significant role in students' decisions on whether to apply to the Defendant's LL.M. program and whether to pursue other opportunities.  The false information caused damage to Plaintiff and other students by causing them to miss opportunities and delaying their academic progress.

## COUNT II:
## Negligent Misrepresentations

87.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

88.    Defendant's actions and omissions also give rise to a cause of action of negligent misrepresentation.

18

89.     The false representation made by Defendant to Plaintiff on several occasions, as alleged above, especially in paragraphs 72 to 86 above, constitutes false representations on which Plaintiff has relied to his detriment.

90.     Even if the administrators who made the false representations did not know that the information was false, they should have known the accurate status of the S.J.D. program and had a duty to disclose the accurate status of the S.J.D. program when publishing information for the general public and asked about it by students, former students, potential applicants, and the general public.   Instead, the administrators falsely misrepresented the status of the S.J.D. program.

91.     The true status of the S.J.D. program is a material fact playing a significant role in students' decisions on whether to apply to the Defendant's LL.M. program and whether to pursue other opportunities.   The false information caused damage to Plaintiff and other students by causing them to miss opportunities and delaying their academic progress.

92.     Students, former students, or potential applicants rely on the information regarding the S.J.D. program and make important decisions on the basis of that information to their detriment.

## COUNT III:
## Violation of the District of Columbia Consumer Protection Procedures Act

93.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

94.     Defendant's action gives rise to a cause of action under the District of Columbia Consumer Protection Procedures Act ("CPPA") codified in District of Columbia Code ("D.C. Code") § 28–3901, et seq.

95.     Over at least the past three years, Defendant has repeatedly and falsely claimed to

19

Plaintiff, its students, and potential LL.M. applicants—on its website, in its academic handbook (bulletin), various publications, and orally during events and conversations—that its S.J.D. program is currently active or will soon be active. In reality, Defendant has indefinitely suspended its S.J.D. program.

96. In doing so, Defendant was engaging in unfair and deceptive trade practices listed in D.C. Code § 28-3904, including, but not limited to, misrepresenting a material fact which has a tendency to mislead; failing to state a material fact if such failure tends to mislead; using innuendo or ambiguity as to a material fact, which has a tendency to mislead; advertising or offering goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

97. Therefore, Defendant has violated the CPPA.

98. Under the D.C. Code § 28-3905(k)(1)(A-B), a consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District on behalf of that individual and on behalf of the general public.

99. Plaintiff is entitled to all remedies provided in D.C. Code § 28-3905(k)(2), including, but not limited to, actual damages; treble damages, or $1,500 per violation, whichever is greater; reasonable attorney's fees; punitive damages; an injunction against the use of the unlawful trade practice; in the case of representative actions, additional relief as may be necessary to restore to the consumer money which may have been acquired by means of the unlawful trade practice.

## COUNT IV:
## Breach of Contract

***Defendant Breached Expressed or, at Minimum, Implied-in-Fact Contract***

20

100.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

101.    When Plaintiff inquired about pursuing an academic career, Defendant, through its administrators and publications, informed Plaintiff that obtaining an LL.M. degree at Georgetown Law would be an important step toward applying for an S.J.D. degree at Georgetown Law.  In other words, Defendant indicated that an LL.M. degree at Georgetown Law would position the Plaintiff well to enroll in Defendant's S.J.D. program.

102.    Relying on Defendant's representation to him that the LL.M. program would serve as a steppingstone to its S.J.D. degree program, Plaintiff entered into a contract with Defendant by enrolling in its LL.M. program.  Both parties viewed this enrollment as a pathway to the S.J.D. degree, as Plaintiff had been informed by Defendant.

103.    In January 2022, Plaintiff was encouraged by Professor Voland, Assistant Dean for Graduate Admissions, to postpone his application to the S.J.D. program for the 2022–2023 academic year to the following (i.e., 2023–2024) academic year.

104.    However, when Plaintiff sought to apply to the program in 2023, he was informed that the program had been paused for one year, and yet, to date, it has not been resumed.

105.    Defendant induced Plaintiff to enter into a contract and enroll in the LL.M. program by assuring him that completing the LL.M. would allow the Plaintiff to later apply to the S.J.D. program— the degree he was really pursuing.  Nonetheless, after Defendant induced Plaintiff, Defendant indefinitely suspended, effectively abolished, the S.J.D. program.

106.    Plaintiff and Defendant entered into a contract regarding the LL.M. program on the condition that Defendant would enable Plaintiff to apply to the S.J.D. program thereafter. Had Plaintiff known at the time that Georgetown Law would suspend its S.J.D. program and that

21

pursuing an S.J.D. degree would not be available to him, he would never have enrolled in Defendant's LL.M. program.

107.    However, as Defendant indefinitely suspended its S.J.D. program, Defendant did not fulfill this condition, thereby breaching the contract.

108.    As Plaintiff was induced to enter into a contract under false pretenses, Plaintiff has a right to rescind the contract and demand a refund of the tuition he paid.

109.    Plaintiff is entitled to damages resulting from Defendant's breach of contract.

110.    More broadly, Defendant has misled—and continues to mislead—its incoming LL.M. students by suggesting that Defendant offers an S.J.D. program, even though the program has not existed for several years.

111.    Defendant induced and continues to induce applicants interested in academic careers to enroll in its LL.M. program and enter a contract with Georgetown Law, while misrepresenting that it has an S.J.D. program.

112.    As a result, LL.M. students are entitled to several remedies, including the right to rescind their contract with Georgetown Law, as well as damages on the basis of a breach of contract claim.

113.    Defendant assured its students, including Plaintiff, at least by implication, that if they earned their LL.M. degree, they would have the option to apply to the S.J.D. program and that their application would be considered.

114.    Furthermore, per the Georgetown Law website, in most cases, an LL.M. degree from an American law school is a requirement for the S.J.D. program.    This statement incentivizes students to enroll in the LL.M. program in order to be eligible for Defendant's S.J.D.

22

program.

115. Understanding the environment in which Defendant and its LL.M. students operate is crucial. Typically, international students who aspire to academic careers and seek an S.J.D. degree must first obtain an LL.M. degree from an American law school, ideally from Georgetown Law, if they wish to pursue an S.J.D. at Georgetown Law. By enrolling in the LL.M. program, students are positioning themselves for potential admission to the S.J.D. program in the future. Consequently, Defendant's agreement with its LL.M. students includes the possibility of progression to the S.J.D. program and allows them to apply to the S.J.D. program after completion of the LL.M. program.

116. However, Georgetown Law has not allowed its LL.M. students to apply to the S.J.D. program, thereby breaching its contract.

### *Defendant Breached Duty of Good Faith and Fair Dealing*

117. Georgetown Law has also breached its duty of good faith and fair dealing in contracts.

118. Defendant repeatedly misinformed and concealed information from Plaintiff. Through its publications and administrators, Defendant misled, misinformed, and concealed information from Plaintiff. Whenever Plaintiff inquired about Defendant fulfilling its commitments under the contract, Defendant either misled Plaintiff or provided false information, preventing Plaintiff from taking steps to change course and explore other opportunities.

119. Defendant repeatedly ignored Plaintiff's requests for information regarding Defendant's contractual obligations and its intention to fulfill them, and refused to meet and

23

confer to settle the differences between the parties and come to a just resolution.

120.    These acts and omissions constitute bad faith on the part of Georgetown Law.

### Defendant Breached Express Warranty

121.    Defendant also has breached its contract with Plaintiff by breaching express warranty.

122.    Plaintiff entered into a contract with Defendant, made payments in the form of tuition and fees, and in exchange, Defendant granted Plaintiff an LL.M. degree.

123.    Defendant, through its publications and administrators, explicitly assured Plaintiff that the LL.M. degree earned by him would put him in a good position for the Defendant's S.J.D. program and render him eligible to apply for the S.J.D. program after earning his LL.M. degree.

124.    However, Defendant breached this contract, thereby breaching the express warranty.

125.    Plaintiff has notified Professor Vázquez and Dean Treanor of the breach and attempted to engage in conversation about how to rectify it, but Plaintiff's goodwill was rejected by Professor Vázquez and ignored by Dean Treanor.

### Defendant Breached Implied Warranty

126.    Alternatively, Defendant breached implied warranty. Plaintiff expressed to Defendant in his LL.M. application that his interest in LL.M. would help him in his academic career.

24

127. Moreover, Plaintiff expressed to Professor Voland and Professor Freeman that he is interested in an LL.M. degree as a steppingstone for an S.J.D. degree.

128. There was a common understanding between Plaintiff and Defendant that the LL.M. degree earned from Georgetown Law would serve as a steppingstone and would allow Plaintiff to apply to Defendant's S.J.D. program.

129. However, as a result of the indefinite suspension of the S.J.D. degree, the LL.M. degree earned and paid for by Plaintiff does not serve its main purpose.

## COUNT V:
## Unjust Enrichment / Implied-in-law Contract / Quasi-contract

130. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

131. Georgetown Law also has the duty to make its S.J.D. program available to its LL.M. students, including Plaintiff, under the theory of implied-in-law contract or quasi-contract, which is based on the principles of unjust enrichment.

132. To attract students interested in academic careers and S.J.D. degrees, Georgetown Law offered them an LL.M. degree while also creating with them the expectation and reliance on the prospect of a future S.J.D. degree offered by Defendant.

133. However, after these students paid tuition for an LL.M. degree, which they pursued not as a standalone degree but as a steppingstone to an S.J.D. degree, Georgetown Law suspended its S.J.D. program indefinitely without a gradual process, notice, or announcement of when Defendant might resume the program.

134. Moreover, by enrolling these students in Defendant's LL.M. program, Georgetown Law effectively foreclosed them from enrolling in S.J.D. programs at other top schools in the U.S., which typically reserve all seats in their S.J.D. programs for their own LL.M.

25

students.

135.    In the case of the Plaintiff, Georgetown Law, through its administrators, made several assurances to Plaintiff that he would be able to apply to the S.J.D. program after obtaining and completing the LL.M. program.

136.    These circumstances provide a strong basis for an unjust enrichment claim against Defendant and in favor of Plaintiff and other similarly situated students.  Georgetown Law was enriched by the tuition and fees of Plaintiff and other students.  It would be unconscionable for Georgetown Law to retain these funds when Plaintiff and other LL.M. students have not received the benefits they expected and relied on – expectations and reliance created by Georgetown Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

1. Declare that Defendant's actions, as alleged herein, violated Plaintiff's rights under applicable laws.

2. Issue an injunction ordering Defendant to remove any mention of an S.J.D. program from Defendant's website or another bulletin, as such information misleads readers to believe that Georgetown Law operates the S.J.D. program while, in fact, Defendant's S.J.D. program is suspended indefinitely.

3. Refund of tuition in the amount of $35,768 and other fees paid by Plaintiff for its LL.M. studies, including interest.

4. Compensatory damages in the amount of $468,230 for loss of future earnings, career opportunities, and other damages.

26

5. Award punitive damages to punish Defendant for its willful, wanton, and malicious conduct and to deter similar conduct in the future.

6. Award Plaintiff's costs and attorneys' fees under applicable laws.

7. Award treble damages, or $1,500 per violation, whichever is greater.

8. Any other relief under applicable laws.

9. Such other relief as the court deems just and proper.

## CLASS ACTION

Plaintiff reserves the right to move the Court in the future to certify this complaint as a class action.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

July 11, 2025

Respectfully submitted,

Uriel Charlap
*Pro se*
10937 Pebble Run Drive,
Silver Spring, MD 20902
(301) 814-7374
Urielc88@gmail.com

27



# S.J.D. Degree

**Love an intellectual challenge? Want to be a legal scholar? You've come to the right place.**

The Doctor of Juridical Science (S.J.D.) is the highest degree offered by Georgetown. Our students come here from all over the world; what they have in common is a desire to teach and write when they return home. We will support you every step of the way, from honing your original idea to confidently sharing your publication.

You will work with our extraordinary faculty, benefit from the world's largest law curriculum, and learn to be an effective scholar.

You will live in one of the world's most important cities—the capital of the United States and home to major international organizations—and have unparalleled access to resources here in Washington, D.C.

And you will join a small, close community of S.J.D. scholars for individualized attention, friendship, and the chance to be part of the academic and social life of our law school.

Admission is contingent on the availability of a full-time faculty member to serve as supervisor for the dissertation. After you are admitted, the S.J.D. Admissions Committee will pair you with a faculty member who will supervise your dissertation. There is no limit to the topics that students may consider as long as they are original, able to contribute to the production of new legal knowledge, and pursued with academic rigor.

**LEARN MORE ABOUT OUR S.J.D.**

| | |
|---|---|
| PROGRAM REQUIREMENTS ▸ | S.J.D. HANDBOOK ▸ |
| S.J.D. STUDENT PROFILES ▸ | S.J.D. ALUMNI PROFILES ▸ |



## Love an intellectual challenge? Want to be a legal scholar? You've come to the right place.

The Doctor of Juridical Science (S.J.D.) is the highest degree offered by Georgetown. Our students come here from all over the world; what they have in common is a desire to teach and write when they return home. We will support you every step of the way, from honing your original idea to confidently sharing your publication.

You will work with our extraordinary faculty, benefit from the world's largest law curriculum, and learn to be an effective scholar.

You will live in one of the world's most important cities—the capital of the United States and home to major international organizations—and have unparalleled access to resources here in Washington, D.C.

And you will join a small, close community of S.J.D. scholars for individualized attention, friendship, and the chance to be part of the academic and social life of our law school.

Admission is contingent on the availability of a full-time faculty member to serve as supervisor for the dissertation. After you are admitted, the S.J.D. Admissions Committee will pair you with a faculty member who will supervise your dissertation. There is no limit to the topics that students may consider as long as they are original, able to contribute to the production of new legal knowledge, and pursued with academic rigor.

**LEARN MORE ABOUT OUR S.J.D.**

PROGRAM REQUIREMENTS                     •     S.J.D. HANDBOOK                     ›

S.J.D. STUDENT PROFILES                     •     S.J.D. ALUMNI PROFILES                     ›

S.J.D. STUDENT PROFILES



# S.J.D. Degree

**Love an intellectual challenge? Want to be a legal scholar? You've come to the right place.**

The Doctor of Juridical Science (S.J.D.) is the highest degree offered by Georgetown. Our students come here from all over the world; what they have in common is a desire to teach and write when they return home. We will support you every step of the way, from honing your original idea to confidently sharing your publication.

You will work with our extraordinary faculty, benefit from the world's largest law curriculum, and learn to be an effective scholar.

You will live in one of the world's most important cities—the capital of the United States and home to major international organizations—and have unparalleled access to resources here in Washington, D.C.

And you will join a small, close community of S.J.D. scholars for individualized attention, friendship, and the chance to be part of the academic and social life of our law school.

Admission is contingent on the availability of a full-time faculty member to serve as supervisor for the dissertation. After you are admitted, the S.J.D. Admissions Committee will pair you with a faculty member who will supervise your dissertation. There is no limit to the topics that students may consider as long as they are original, able to contribute to the production of new legal knowledge, and pursued with academic rigor.

**LEARN MORE ABOUT OUR S.J.D.**

| | |
|---|---|
| PROGRAM REQUIREMENTS | S.J.D. HANDBOOK |
| S.J.D. STUDENT PROFILES | S.J.D. ALUMNI PROFILES |

S.J.D. STUDENT PROFILES



### S.J.D. Degree

**Love an intellectual challenge? Want to be a legal scholar?**
**You've come to the right place.**

The Doctor of Juridical Science (S.J.D.) is the highest degree offered by Georgetown. Our students come here from all over the world; what they have in common is a desire to teach and write when they return home. We will support you every step of the way, from honing your original idea to confidently sharing your publication.

You will work with our extraordinary faculty, benefit from the world's largest law curriculum, and learn to be an effective scholar

You will live in one of the world's most important cities—the capital of the United States and home to major international organizations—and have unparalleled access to resources here in Washington, D.C.

And you will join a small, close community of S.J.D. scholars for individualized attention, friendship, and the chance to be part of the academic and social life of our law school.

Admission is contingent on the availability of a full-time faculty member to serve as supervisor for the dissertation. After you are admitted, the S.J.D. Admissions Committee will pair you with a faculty member who will supervise your dissertation. There is no limit to the topics that students may consider as long as they are original, able to contribute to the production of new legal knowledge, and pursued with academic rigor.

**National S.J.D. Roundtable: April 21, 2023**

LEARN MORE ABOUT OUR S.J.D.

PROGRAM REQUIREMENTS            S.J.D. HANDBOOK

S.J.D. STUDENT PROFILES          S.J.D. ALUMNI PROFILES

S.J.D. STUDENT PROFILES



# S.J.D. Degree

**Love an intellectual challenge? Want to be a legal scholar? You've come to the right place.**

The Doctor of Juridical Science (S.J.D.) is the highest degree offered by Georgetown. Our students come here from all over the world; what they have in common is a desire to teach and write when they return home. We will support you every step of the way, from honing your original idea to confidently sharing your publication.

You will work with our extraordinary faculty, benefit from the world's largest law curriculum, and learn to be an effective scholar.

You will live in one of the world's most important cities—the capital of the United States and home to major international organizations—and have unparalleled access to resources here in Washington, D.C.

And you will join a small, close community of S.J.D. scholars for individualized attention, friendship, and the chance to be part of the academic and social life of our law school.

Admission is contingent on the availability of a full-time faculty member to serve as supervisor for the dissertation. After you are admitted, the S.J.D. Admissions Committee will pair you with a faculty member who will supervise your dissertation. There is no limit to the topics that students may consider as long as they are original, able to contribute to the production of new legal knowledge, and pursued with academic rigor.

**National S.J.D. Roundtable: April 21, 2023**

**LEARN MORE ABOUT OUR S.J.D.**

| PROGRAM REQUIREMENTS | › | S.J.D. HANDBOOK | › |
| S.J.D. STUDENT PROFILES | › | S.J.D. ALUMNI PROFILES | › |

**S.J.D. STUDENT PROFILES**



## S.J.D. Degree

**Love an intellectual challenge? Want to be a legal scholar? You've come to the right place.**

The Doctor of Juridical Science (S.J.D.) is the highest degree offered by Georgetown. Our students come here from all over the world; what they have in common is a desire to teach and write when they return home. We will support you every step of the way, from honing your original idea to confidently sharing your publication.

You will work with our extraordinary faculty, benefit from the world's largest law curriculum, and learn to be an effective scholar.

You will live in one of the world's most important cities—the capital of the United States and home to major international organizations—and have unparalleled access to resources here in Washington, D.C.

And you will join a small, close community of S.J.D. scholars for individualized attention, friendship, and the chance to be part of the academic and social life of our law school.

Admission is contingent on the availability of a full-time faculty member to serve as supervisor for the dissertation. After you are admitted, the S.J.D. Admissions Committee will pair you with a faculty member who will supervise your dissertation. There is no limit to the topics that students may consider as long as they are original, able to contribute to the production of new legal knowledge, and pursued with academic rigor.

**National S.J.D. Roundtable: April 21, 2023**

Learn More About Our S.J.D.

| Program Requirements | S.J.D Handbook |
| S.J.D. Student Profiles | S.J.D. Alumni Profiles |

**S.J.D. Student Profiles**



## S.J.D. Degree

Home   Academics   Graduate Programs   Search by Degree Type   **S.J.D. Degree**

**Love an intellectual challenge? Want to be a legal scholar?**
**You've come to the right place.**

The Doctor of Juridical Science (S.J.D.) is the highest degree offered by Georgetown. Our students come here from all over the world; what they have in common is a desire to teach and write when they return home. We will support you every step of the way, from honing your original idea to confidently sharing your publication.

You will work with our extraordinary faculty, benefit from the world's largest law curriculum, and learn to be an effective scholar.

You will live in one of the world's most important cities—the capital of the United States and home to major international organizations—and have unparalleled access to resources here in Washington, D.C.

And you will join a small, close community of S.J.D. scholars for individualized attention, friendship, and the chance to be part of the academic and social life of our law school.

Admission is contingent on the availability of a full-time faculty member to serve as supervisor for the dissertation. After you are admitted, the S.J.D. Admissions Committee will pair you with a faculty member who will supervise your dissertation. There is no limit to the topics that students may consider as long as they are original, able to contribute to the production of new legal knowledge, and pursued with academic rigor.

**Learn More About Our S.J.D.**

Program Requirements      »      S.J.D. Handbook      »

S.J.D. Student Profiles      »      S.J.D. Alumni Profiles      »

**S.J.D. Student Profiles**



S.J.D. Degree | Georgetown Law

web.archive.org/web/20250124205720/https://www.law.georgetown.edu/academics/graduate-programs/degrees/s-j-d-degree/

HOME   ACADEMICS   GRADUATE PROGRAMS   SEARCH BY DEGREE TYPE   S.J.D. DEGREE

## S.J.D. Degree

**Love an intellectual challenge? Want to be a legal scholar? You've come to the right place.**

The Doctor of Juridical Science (S.J.D.) is the highest degree offered by Georgetown. Our students come here from all over the world; what they have in common is a desire to teach and write when they return home. We will support you every step of the way, from honing your original idea to confidently sharing your publication.

You will work with our extraordinary faculty, benefit from the world's largest law curriculum, and learn to be an effective scholar.

You will live in one of the world's most important cities—the capital of the United States and home to major international organizations—and have unparalleled access to resources here in Washington, D.C.

And you will join a small, close community of S.J.D. scholars for individualized attention, friendship, and the chance to be part of the academic and social life of our law school.

Admission is contingent on the availability of a full-time faculty member to serve as supervisor for the dissertation. After you are admitted, the S.J.D. Admissions Committee will pair you with a faculty member who will supervise your dissertation. There is no limit to the topics that students may consider as long as they are original, able to contribute to the production of new legal knowledge, and pursued with academic rigor.

LEARN MORE ABOUT OUR S.J.D.

PROGRAM REQUIREMENTS          S.J.D. HANDBOOK

S.J.D. STUDENT PROFILES          S.J.D. ALUMNI PROFILES

S.J.D. Student Profiles

40

## GRADUATE DEGREES AND CERTIFICATES

Full-time enrollment is required for the S.J.D. program, the LL.M. in Advocacy, and the LL.M. in Global Health Law and Governance. The Executive Master of Laws in Securities and Financial Regulation is available only on a part-time basis. Otherwise, the graduate programs below are designed for both full-time and part-time students. Students relying on a student visa must be enrolled on a full-time basis.

### Graduate Programs

- Doctor of Juridical Science (S.J.D.)
- Master of Laws in Advocacy
- Master of Laws (General Studies)
- Master of Laws in Environmental and Energy Law
- Master of Laws in National and Global Health Law
- Master of Laws in Global Health Law and Governance
- Master of Laws in International Business and Economic Law
- Master of Laws in International Legal Studies
- Master of Laws in National Security Law
- Executive Master of Laws in Securities and Financial Regulation
- Master of Laws in Taxation
- Master of Laws in Technology Law and Policy
- Master of Law and Technology
- Master of Studies in Law in Taxation

### J.D./LL.M. Joint Degree Programs

- J.D./LL.M. Joint Degree in Environmental and Energy Law
- J.D./LL.M. Joint Degree in National and Global Health Law
- J.D./LL.M. Joint Degree in International Business and Economic Law
- J.D./LL.M. Joint Degree in National Security Law
- J.D./LL.M. Joint Degree in Taxation

### Certificates

- Certificate in Employee Benefits Law†
- Certificate in Estate Planning†
- Certificate in Food and Drug Law†
- Certificate in International Arbitration and Dispute Resolution
- Certificate in International Human Rights Law
- Certificate in International Taxation†
- Certificate in Refugees and Humanitarian Emergencies
- Certificate in Securities & Financial Law
- Certificate in State and Local Taxation†
- Certificate in U.S. Health Law†
- Certificate in World Trade Organization (WTO) & International Trade Studies
- Certificate in Legal English

---

† These certificates are open to students admitted solely to these certificate programs, as well as to students pursuing an LL.M. program.



GEORGETOWN LAW

Home / Academics / Academic Resources / Registrar / **Student Handbook**

# Georgetown Law Student Handbook of Academic Policies

The *Georgetown Law Student Handbook of Academic Policies* (known as the *Georgetown Law Bulletin* prior to 2013-2014) is the Law Center's official publication of academic rules.

View the **Handbook** or download the entire current **Handbook as a PDF.**

*The* Student Handbook *has been updated to reflect the changes to the Academic Calendar published on November 25, 2024. You can view the changes in redline* here.

## 2024-2025 Georgetown Law Student Handbook

What you'll find in the Student Handbook:

1. **Academic Calendar**

2. **Juris Doctor Program**

3. **Graduate Programs**

4. **General Administrative Policies**

5. **Conduct Policies**

6. **Tuition and Fees**



**Contact Info**

**Academic Affairs**

Georgetown Law
Office of Academic Affairs
Hotung Suite 4300
600 New Jersey Ave., NW
202.662.9041

Email
lawacademicaffairs@georgetown.edu



## Academic Advising for Graduate Students

Graduate Program Directors provide academic and personal advising on course selection; underloading/overloading; leaves of absence; withdrawal from courses or the Law Center; enrollment in classes outside the Law Center, approval for Graduate Independent Research; academic policies; and advice on certificate requirements.

Assistant Dean for Graduate and International Program ..................................................... Tiffany Joly

Program Directors

    General Studies/IBEL, ILS ............................... Andrea Rodríguez Escobedo, Program Director

    Environmental and Energy Law ...................... ...................... Lydia Slobodian, Program Director

    Executive and Online Programs ...................... ................... Cynthia Rockwell, Program Director

    Health Law ................................................... ............................ Sarah Bosha, Program Director

    National Security Law ..................................... ........................ Todd Huntley, Program Director

    Taxation ......................................................... ............................ Ellis Duncan, Program Director

    Technology Law and Policy .............................. ...................... Mary Pat Dwyer, Program Director

Certificate Directors

    International Arbitration and Dispute Resolution ......... Anne Marie Whitesell, Faculty Director

    Certificate in Legal English ............................ ................................... Tiffany Joly, Assistant Dean

    Refugees and Humanitarian Emergencies ...... ................ Andrew Schoenholtz, Faculty Director

    WTO & International Trade Studies ............... ...................... Katrin Kuhlmann, Faculty Director

Clinical Teaching Fellows (Master of Laws in Advocacy) ............... Patrick Griffith, Assistant Dean

DCALF Fellows (Master of Laws in Advocacy) . .............................. Rachel Camp, Faculty Director

Doctor of Juridical Science (S.J.D.) ...................... ................................... Tiffany Joly, Assistant Dean

Leadership and Advocacy for Women in Africa Fellows ............. Jill Morrison, Executive Director

## DOCTOR OF JURIDICAL SCIENCE (S.J.D.)

The Doctor of Juridical Science (S.J.D.) is the highest degree offered by Georgetown University Law Center, designed for foreign-trained law graduates who are interested in becoming law professors, scholars, jurists, or public intellectuals, or in deepening their scholarship to continue in these fields.

## Degree Requirements

To earn an S.J.D., a student must meet the following requirements:

- Two years in full-time residence;
- Successful completion of required and elective courses;
- Successful completion of a dissertation or, if approved, a series of substantial law review articles;
- Successful oral defense of the dissertation or series of articles; and
- Submission of the dissertation in compliance with S.J.D. Program guidelines.

Graduate Programs

| J.D./M.P.H.; or M.P.H./LL.M. in Global Health Law | While at Georgetown Law: Georgetown Law tuition (to Georgetown Law). While at Johns Hopkins: Johns Hopkins tuition (to Johns Hopkins). |
|---|---|

## GRADUATE PROGRAMS

To review the credit requirements for full-time and part-time graduate students, see the *Graduate Programs* chapter of this *Handbook*.

| Full-Time LL.M. Students | $82,264.00 per academic year<br>$41,132.00 per semester |
|---|---|
| Part-Time LL.M. Students | $3,428.00 per credit hour |
| Summer Session 2025 Tuition | $3,428.00 per credit hour<br>*Note:* Tuition, fee schedules, budgetary considerations, and other tuition rules for the LL.M. Summer Experience are available on the *LL.M. Summer Experience website*. |
| Non-Degree Students | $3,428.00 per credit hour |
| S.J.D. Students | 1st year: $79,864.00<br>2nd year on campus: $12,984.00 per semester<br>3rd, 4th, & 5th years: $3,247.00 per semester |

## SPECIAL TUITION RULES APPLICABLE TO PART-TIME STUDENTS

Tuition for any additional courses enrolled in during the registration period must be paid by the last day of add/drop activity as posted in the *Academic Calendar*. Tuition will be refunded for courses dropped or from which students are withdrawn based on the *Tuition Refund Policies*, described below.

Part-time J.D. students in their final semester of law school may take more than 85 credits and will not be charged for those extra credits, under the below conditions:

- The student pays for 85 Law Center credits on a per-credit basis. Transfer students and students who have switched to the full-time division are ineligible for tuition relief under this policy. Additionally, the following are not counted as paid Law Center credits for purposes of this policy:
  - Credits earned at other law schools;
  - Credits earned in a study abroad programs other than CTLS; or
  - Credits earned in Main Campus courses taken in the Summer (when Main Campus rates apply).
- The student cannot exceed the 12 credit per-semester maximum (or 8 credit maximum if the student's final semester is a Summer session).
- Any extra credits taken must be taken in Law Center courses.

Tuition and Fees

| Full-Time LL.M. Students | $74,340.00 per academic year<br>$37,170.00 per semester |
|---|---|
| Part-Time LL.M. Students | $3,098.00 per credit hour |
| Summer Session 2023 Tuition | $3,098.00 per credit hour<br><br>*Note:* Tuition, fee schedules, budgetary considerations, and other tuition rules for the LL.M. Summer Experience are available on the *LL.M. Summer Experience website*. |
| Non-Degree Students | $3.098.00 per credit hour |
| S.J.D. Students | 1st year: $72,170.00<br>2nd year on campus: $11,732.00 per semester<br>3rd, 4th, & 5th years: $2,934.00 per semester |

## SPECIAL TUITION RULES APPLICABLE TO PART-TIME STUDENTS

Tuition for any additional courses enrolled in during the registration period must be paid by the last day of add/drop activity as posted in the *Academic Calendar*. Tuition will be refunded for courses dropped or from which students are withdrawn based on the *Tuition Refund Policies*, described below.

Part-time J.D. students in their final semester of law school may take more than 85 credits and will not be charged for those extra credits, under the below conditions:

- The student pays for 85 Law Center credits on a per-credit basis. Transfer students, students who have switched to the full-time division, and students who receive scholarship and grants are ineligible for tuition relief under this policy. Additionally, the following are not counted as paid Law Center credits for purposes of this policy:
  - Credits earned at other law schools;
  - Credits earned in a study abroad programs other than CTLS; or
  - Credits earned in Main Campus courses taken in the Summer (when Main Campus rates apply).
- The student cannot exceed the 12 credit per-semester maximum (or 8 credit maximum if the student's final semester is a Summer session).
- Any extra credits taken must be taken in Law Center courses.
- The Registrar, in consultation with the Office of Student Accounts, must provide approval. Interested students must submit their request to the Registrar using the J.D. Part-Time Tuition Provision Form (available on the Registrar's *Course Registration webpage*) no later than the first day of classes for the applicable semester.

## TUITION EQUALIZATION FEE

Students approved to transfer between the part-time and full-time division of their programs may be subject to a tuition equalization fee to ensure the total cost of tuition remains consistent for all students across divisions of the program. For the policies and procedures governing how