**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| URIEL CHARLAP, *Plaintiff*, | ) | |
| v. | ) | Civil Action No. 1:26-cv-2800-SLS |
| GEORGETOWN UNIVERSITY LAW CENTER, *Defendant*. | ) | |

# DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT


**GEORGETOWN UNIVERSITY**
*By Counsel*

John E. Thomas, Jr. (DC Bar No. 1049100)
**McGuireWoods LLP**
1750 Tysons Boulevard, Suite 1800
Tysons, Virginia 22102-4215
Tel: (703) 712-5000
Fax: (703) 712-5050
jethomas@mcguirewoods.com

Brandon K. Wharton (DC Bar No. 90022982)
**McGuireWoods LLP**
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
Tel: (410) 659-4400
Fax: (410) 659-4599
bwharton@mcguirewoods.com

Sarah K. Wake (*pro hac vice* forthcoming)
**McGuireWoods LLP**
77 West Wacker Drive, Suite 4100
Chicago, Illinois 60601-1818
Tel: (312) 849-8238
Fax: (312) 698-4538
swake@mcguirewoods.com

Defendant Georgetown University ("Georgetown" or the "University"),[1] by counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7, moves to dismiss this action for failure to state a claim upon which relief can be granted.[2]

## I. <u>INTRODUCTION</u>

Plaintiff Uriel Charlap ("Charlap"), who is *pro se*, is a licensed attorney. After first attending Georgetown's law school as an exchange student in the fall of 2018, he enrolled in its Master of Laws ("LL.M.") program in August 2021 and earned his LL.M. in May 2022. He had hoped to apply for admission to Georgetown's five-year Doctor of Juridical Science ("S.J.D.") program starting in August 2023, but by then the University had paused admission of new S.J.D. students. Though Georgetown did not invite or accept applications for ***new*** S.J.D. students, it allowed currently enrolled S.J.D. students to remain enrolled and to complete their degrees. Charlap has parlayed his disappointment in Georgetown's S.J.D. admission pause into a six-count lawsuit against the University. None of his claims states a viable cause of action and the Court should dismiss the Amended Complaint in its entirety.

---

[1] Charlap named "Georgetown University Law Center" as the Defendant in this action. Defendant's legal name is "Georgetown University."

[2] Charlap purports to "reserve[] the right to move the Court in the future to certify this Amended complaint as a class action." Am. Compl. at 45. But he offers no allegations to proceed on a class-wide basis and cannot do so *pro se*. Accordingly, Georgetown treats this as an individual action.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Charlap's Allegations[3]

#### 1. Georgetown has offered multiple law-related degrees, including the S.J.D. degree.

The Georgetown University Law Center is a private law school located in Washington, D.C. Am. Compl. ¶ 10. Over the years, it has offered several degrees, including the Juris Doctor ("J.D."), LL.M., and S.J.D. *Id.* ¶ 11. The J.D. is the primary professional law degree in the United States. *Id.* ¶ 12. The LL.M. is for persons who already hold a law degree, including foreign-trained lawyers without a J.D. *Id.* ¶ 13. And, according to the Amended Complaint, the S.J.D. is for individuals who wish to pursue careers in legal scholarship, research, and academia. *Id.* ¶ 14.

The S.J.D. is "the law equivalent of a Ph.D." *Id.* Students must "complete their dissertation within five years" of their matriculation into the S.J.D. program. *Id.* ¶ 21. Admission to Georgetown's S.J.D. program requires an LL.M.[4] *Id.* ¶¶ 16–17, 66. Students work closely with a faculty supervisor "to produce a significant dissertation that offers original insights into the field of law." *Id.* ¶ 14. It "is designed around a close, mentoring relationship between supervisor and students, making personal connections with faculty absolutely essential for success" and requires "establishing meaningful connections within a school's community." *Id.* ¶ 19. If a professor develops "a really close relationship" with a student, and the professor "really thinks [the student

---

[3] The factual allegations provided herein are adopted from the Amended Complaint and accepted as true solely for the purpose of presenting this motion under Federal Rule of Civil Procedure 12(b). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[4] While some LL.M. students consider applying for admission into an S.J.D. program, many others "pursue[] law firm internships, externships, and networking oriented toward U.S. legal employment." Am. Compl. ¶ 84; *see also id.* ¶ 73 (alleging that "other LL.M. applicants . . . are motivated to enroll in the LL.M. program to become eligible for admittance to the New York Bar and to enter the U.S. legal market"). As demonstrated in the Amended Complaint, the LL.M. is a discrete academic program with its own admissions requirements and course of study. *See id.*

has] a great idea for [a] dissertation and wants to support [the student]," then the S.J.D. program might be available to the student, who must nevertheless go through an application process. *Id.* ¶ 80.

**2. Charlap enrolled at Georgetown as an exchange student and later applied to its LL.M. program.**

Charlap attended Georgetown in the fall of 2018 as an exchange student from the Hebrew University Faculty of Law. Am. Compl. ¶¶ 9, 64. During orientation in the fall of 2018, a Georgetown administrator informed Charlap that earning an LL.M. was a prerequisite to applying for the S.J.D. program. *Id.* ¶¶ 64–66. In October 2020, Charlap applied to Georgetown's LL.M. program for the 2021–22 academic year. *Id.* ¶ 70. He stated in his application that he planned to pursue "academic scholarship, not bar admission or law firm employment." *Id.* ¶ 72. Georgetown admitted him to its LL.M. program in August 2021. *Id.* ¶ 82.

In April 2021, Georgetown hosted a Zoom "Information Session" about the S.J.D. program for prospective LL.M. students (like Charlap). *Id.* ¶ 74. There, Professors Alexa Freeman and Caryn Voland provided an overview of the S.J.D. program and explained the application process. *Id.* During the call, Charlap stated that it was his "intention to take the S.J.D." and inquired about whether that goal should have any bearing on what classes he should take as an LL.M. student. *Id.* ¶ 77. Professor Freeman responded that he "should focus on his area of scholarly interest and to participate in seminars to gain experience in writing seminar papers." *Id.* ¶ 79.

**3. Charlap contemplates applying to the S.J.D. program for admission in the fall of 2022 but decides against doing so.**

In January 2022, while an LL.M. student, Charlap considered applying to the S.J.D. program but deferring enrollment if he were accepted. *Id.* ¶ 85. At that time, he asked Professor Voland for advice on whether to apply for admission in the fall of 2022 and, if accepted, defer

enrollment until the fall of 2023 or simply to wait to apply. *Id*. Professor Voland offered her opinion that Charlap should wait to apply when he was ready to begin his studies. *Id.*; *see also* **Ex. A** (Jan. 2022 Emails regarding S.J.D. Deferral).[5] Professor Voland further cautioned that "it might not be possible to grant a deferral for the SJD" and "[i]t also might not be possible to defer any financial assistance received for one year into the next year." **Ex. A**. Charlap received the LL.M. degree in May 2022. Am. Compl. ¶¶ 9, 82. He decided not to apply for admission to the S.J.D. program in the fall of 2022 when he was eligible to do so. *Id.* ¶ 86.

**4. Georgetown informs Charlap that the University is pausing admissions to the S.J.D. program.**

On February 3, 2023, nine months after Charlap's LL.M. graduation, Professor Freeman informed Charlap that the S.J.D. program would be pausing the upcoming application cycle (for enrollment in the 2023–24 academic year) because the two professors running the program (Professors Freeman and Robin West) were retiring. *Id.* ¶ 91. Professor Freeman expressed her "confidence" that the S.J.D. program "would resume in some form the following year." *Id.* The following week, Professor Voland informed Charlap that the University was "exploring different models for continuing the S.J.D. program." *Id.* ¶ 94. At this point, Charlap still had not applied to Georgetown's S.J.D. program.

The following month, March 2023, Charlap "applied to the S.J.D. program at Emory Law School and was encouraged by Emory to join the program for the 2023-2024 academic year." *Id.* ¶ 120. He declined. *Id.*

---

[5] The Court may consider documents referenced in the Amended Complaint and central thereto without converting the motion to one for summary judgment. *See Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*, 540 F. Supp. 2d 231, 235 (D.D.C. 2008). Given that Professor Voland's advice forms the basis of several of Charlap's claims, it is integral to the Amended Complaint.

Eight months later, in October 2023, Professor Voland informed Charlap that Georgetown "decided to pause the [S.J.D.] admissions again this year" (for enrollment in the 2024–25 academic year). *Id.* ¶ 96.

In January 2024, Charlap "again applied to the S.J.D. program at Emory Law School and was encouraged by Emory to join the program for the academic year 2024-2025." *Id.* ¶ 121. He declined Emory's admission offer once more. *Id.*

On July 2, 2024, Professor Voland informed Charlap that "there has been no final decision about the program's structure going forward." *Id.* ¶ 99.

Three months later, in October 2024, Professor Carlos Vázquez informed Charlap that Georgetown is "not currently accepting [S.J.D.] applications for Fall 2025." *Id.* ¶ 101. Professor Vázquez told Charlap that if Georgetown were to begin accepting new applicants, Charlap would be welcome to apply. *Id.* At no point did Charlap ever apply to the Georgetown S.J.D. program.

**5. Georgetown's website and Student Handbook of Academic Policies stated accurate information about the S.J.D. program.**

The S.J.D. program, like other degree programs offered by Georgetown, is referenced on the University's website and in its Student Handbook of Academic Policies (the "Student Handbook"). *Id.* ¶¶ 26–31. Those publications accurately describe the doctoral-level S.J.D. as "the highest degree offered by Georgetown," provide a tuition schedule, and describe basic facts about the S.J.D. curriculum and program structure. *Id.* Critically, and as relevant here, Charlap does not allege that any Georgetown publication solicited applications for enrollment or stated that Georgetown was accepting S.J.D. applications when it was not. The opposite is true: Georgetown's website has stated clearly when it is ***not*** accepting applications for the S.J.D. program. For example, Georgetown's website announced, in bold text, "**We will not be accepting**

**new applications**," or similar language, for the fall 2023, fall 2024, and fall 2025 admissions cycles.[6] *See* ECF No. 1-25 (Georgetown's Feb. 26, 2026 Mot. for Reconsideration) at 11, 13, 15.

### B. Procedural History

Charlap filed this lawsuit on July 11, 2025 in the Superior Court of the District of Columbia. *See* Compl. (ECF No. 1-3). The Complaint alleged five causes of action: (1) fraudulent misrepresentation (Count I); (2) negligent misrepresentations (Count II); (3) violations of the District of Columbia Consumer Protection Procedures Act (Count III); (4) breach of contract (Count IV); and (5) unjust enrichment/implied-in-law contract/quasi-contract (Count V). Georgetown moved to dismiss the Complaint and, on February 5, 2026, the Superior Court dismissed four of Charlap's five claims. *See* Feb. 5, 2026 Order at 23–24 (ECF No. 1-23). The Superior Court (Oler, J.) allowed the lawsuit to proceed solely on one portion of Charlap's negligent misrepresentation claim in Count II. *Id.*

After Georgetown answered the Complaint, Charlap moved for leave to amend his Complaint. Charlap's Mot. for Leave (ECF No. 1-39). The court denied the motion without prejudice because the proposed amended complaint was "substantively unclear and [sought] to reinstate a dismissed claim with no valid basis for doing so." June 23, 2026 Order at 4 (ECF No. 1-40). Charlap then filed a Renewed Motion for Leave to File Amended Complaint, which the

---

[6] Integral to Charlap's claims are historical iterations of Georgetown's website, as evidenced by the fact that he attached to his Amended Complaint eight different snapshots from the Internet Archive Wayback Machine. *See* Am. Compl. Ex. A (ECF No. 1-46); *see also Marcelus*, 540 F. Supp. 2d at 235. Accordingly, the following webpages are also integral to the Amended Complaint: **Ex. B**, *S.J.D. Applicants*, Georgetown Law (Nov. 27, 2022), https://web.archive.org/web/20221127015702/https://www.law.georgetown.edu/admissions-aid/graduate-admissions/sjd/; **Ex. C**, *S.J.D. Applicants*, Georgetown Law (Sept. 25, 2023), https://web.archive.org/web/20230925030736/https://www.law.georgetown.edu/admissions-aid/graduate-admissions/sjd/; and **Ex. D**, *S.J.D. Applicants*, Georgetown Law (Oct. 4, 2024), https://web.archive.org/web/20241004183822/https://www.law.georgetown.edu/admissions-aid/graduate-admissions/sjd/.

Superior Court granted, while permitting Georgetown the opportunity to file a Motion to Dismiss for Failure to State a Claim. *See* Am. Compl. (ECF No. 1-41); July 20, 2026 Order at 4 (ECF No. 1-44).

The Amended Complaint, which was accepted as filed as of July 20, 2026, re-pleads four of the claims that the Superior Court previously dismissed in whole or in part for failure to state a claim: (1) fraudulent misrepresentation (Count I); (2) negligent misrepresentation (Count II); (3) breach of contract (Count IV); and (4) unjust enrichment/implied-in-law contract/quasi-contract (Count V). It also asserts new claims for alleged violations of the Lanham Act, 15 U.S.C. § 1125, *et seq.* (Count III) and promissory estoppel (Count VI). *See* Am. Compl. ¶¶ 104–98 (ECF No. 1-46).

Because Charlap raised a federal question in his Amended Complaint, Georgetown timely removed the case to this Court on August 7, 2026. *See generally* Notice of Removal (ECF No. 1). Georgetown now moves to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## III. <u>LEGAL STANDARD</u>

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim or complaint." *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor will "naked assertion[s]" devoid of "some further factual enhancement" preclude dismissal. *Twombly*, 550 U.S. at 557. Instead, the plaintiff must allege sufficient facts from which "the court [may] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678. Notwithstanding these general pleading requirements, fraud claims are subject to a "heightened pleading standard" and must be pleaded "with particularity" to withstand a dismissal motion. *United States ex rel. Kini v. Tata Consultancy Servs., Ltd*, 146 F.4th 1184, 1192 (D.C. Cir. 2025) (quoting Fed. R. Civ. P. 9(b)).

## IV. <u>ARGUMENT</u>

### A. Charlap Fails to State a Claim for Fraudulent Misrepresentation (Count I) or Negligent Misrepresentation (Count II).

To state a claim for fraudulent misrepresentation, Charlap must allege facts showing: (1) Georgetown made a false representation of a material fact; (2) Georgetown knew the representation was false; (3) Georgetown intended to induce Charlap to rely on the misrepresentation; (4) Charlap acted in reliance on that misrepresentation; and (5) he suffered damages as a result of that reliance. *See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1130 (D.C. 2015). As noted above, fraud claims have a heightened pleading standard and thus require Charlap to plead "with particularity" the "time, place, and contents of the false representations, the facts misrepresented, and what was obtained or given up as a consequence of the fraud." *See* Fed. R. Civ. P. 9(b).

To state a claim for negligent misrepresentation, Charlap must allege facts showing that: (1) Georgetown made a false statement; (2) he relied on Georgetown's misrepresentation to his detriment; and (3) he suffered damages as a result. *Sundberg*, 109 A.3d at 1130.

#### 1. The oral representations Charlap alleges do not support a misrepresentation claim.

Charlap claims Georgetown made oral misrepresentations that caused him to enroll in the LL.M. program. Specifically:

- In April 2021 (about four months before Charlap enrolled in the LL.M. program), Professors Freeman and Voland provided an overview of the S.J.D. program to students

during a Zoom meeting and explained the application process. *See* Am. Compl. ¶¶ 74–75.

Charlap also alleges Georgetown administrators made certain representations to him ***after*** he had already enrolled in the LL.M. program. Specifically, he alleges:

- In January 2022, Georgetown administrators told him "to postpone his S.J.D. application to the following year without disclosing that the following year's application cycle would not open." Am. Compl. ¶ 107.

- Georgetown administrators "falsely misrepresented" that "the pause of the S.J.D. would be short lived." Am. Compl. ¶ 111.

As discussed below, and as Judge Oler of the D.C. Superior Court properly concluded, none of these oral statements forms a basis for a misrepresentation claim. *See* Feb. 5, 2026 Order at 8 (ECF No. 1-23).

***Falsity.*** Falsity is an "essential element" of misrepresentation claims. *See Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013); *Ternes v. C.R. Home Improvement*, No. 24-1277, 2025 WL 894418, at *5 (D.D.C. Mar. 24, 2025) (Sooknanan, J.) (defining a false representation as one that is not in accord with the facts). Charlap does not allege that any statement made, at any time, was false. In fact, the Amended Complaint suggests that all of the statements made were either ***true*** or mere ***opinions*** or ***advice***. For example, Charlap does not allege that it is false that an LL.M. is a prerequisite for the S.J.D. program, and Charlap does not allege that anything said during the April 2021 Zoom meeting was false. Indeed, Judge Oler held as much when she considered the same issue. *See* Feb. 5, 2026 Order at 5 (ECF No. 1-23) ("Plaintiff's claim for fraudulent misrepresentation fails as to statements made prior to his matriculation because he has not sufficiently pled that the statements he relied on were false."); *id.* ("Plaintiff has not alleged that the statement about the LL.M. being a prerequisite or any of the information presented at the event about the S.J.D. program was false.").

Likewise, Georgetown administrators did not tell him that he had to postpone his application to the S.J.D. program. To the contrary, Charlap approached Professors Freeman and Voland "to inquire about the possibility of deferring admission." *Id.* ¶ 85. In response, Professor Voland advised him:

> If you think you may enroll in Fall 2022, then you should apply for Fall 2022 and if you are admitted but your plans change and you can't enroll until Fall 2023, it is possible to ***request*** a deferral. However, it might not be possible to grant a deferral for the SJD because it depends on the availability of a supervisor for the dissertation project, who may agree to be available for a Fall 2022 admission but might not be available in 2023. It also might not be possible to defer any financial assistance received for one year into the next year. Therefore, if your plan is really to start in Fall 2023, it is better to apply specifically in that application cycle, for the year in which you actually want to begin.

**Ex. A** (emphasis added). Charlap does not allege that Professor Voland made any false representations about the future of the program. And, in any event, "opinions or predictions of future events do not constitute representations of material fact upon which a plaintiff successfully may place dispositive reliance." *Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of United States*, 258 F. Supp. 3d 1, 13 (D.D.C. 2017). Accordingly, Judge Oler previously concluded that these statements were not false. *See* Feb. 5, 2026 Order at 6 (ECF No. 1-23) (holding that Charlap "does not allege that Professor Voland's statement [about deferring admission] was false or an omission").

Finally, rather than allege that someone misrepresented the length of the program's pause, Charlap alleges that Professor Freeman "expressed confidence" in February 2023 that "the [S.J.D.] degree itself will be offered" the next year. Am. Compl. ¶ 91. A week later, Professor Voland told him that the "administration is exploring different models for continuing the S.J.D. program." *Id.* ¶ 94. Then, on October 26, 2023, Professor Voland told Charlap that Georgetown "decided to pause the admissions again this year." *Id.* ¶ 96. Charlap does not allege that any of these

statements was false when made. *See* Feb. 5, 2026 Order at 6 (ECF No. 1-23) (holding that Charlap failed to state a claim in this regard). The lack of any alleged false statements dooms Charlap's fraudulent and negligent misrepresentation claims.

***Materiality.*** Charlap does not allege that any of the pre-LL.M. statements were "material"[7] to students deciding whether to enroll in the LL.M. program. The April 2021 Zoom meeting was merely an "information session," not a meeting to encourage students to enroll in the LL.M. program, much less one encouraging them to enroll in the LL.M. program solely for the purpose of one day applying to an S.J.D. program that might or might not accept them.

The post-LL.M. representations fare no better. Professor Voland merely offered her opinion that "it is better to apply specifically in [the] application cycle, for the year in which you actually want to begin", even though it was "possible to request a deferral." Am. Compl. ¶ 85; **Ex. A**. Professor Freeman's "confidence" that Georgetown would offer the S.J.D. the following year is not material. Charlap does not allege that Professor Freeman's confidence was expressed to induce him to take any particular action. For this additional reason, Charlap's claims fail.

***Knowledge.*** To succeed on his fraudulent misrepresentation claim, Charlap must allege that Georgetown administrators—intending to deceive him into enrolling in the LL.M. program—***knew*** in the fall of 2018 or April 2021 that Georgetown would not be accepting S.J.D. applications ***two years in the future***—for the fall of 2023—and falsely told him otherwise. Charlap makes no such allegation. While he alleges "upon information and belief" that "Defendant" had already

---

[7] Materiality is "the principled basis for distinguishing everyday misstatements from actionable fraud." *Kousisis v. United States*, 605 U.S. 114, 131 (2025). A misrepresentation is "material" if it would be "likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." *Sundberg*, 109 A.3d at 1131. "Resembling a but-for standard, materiality asks whether the misrepresentation constituted an inducement or motive to enter into a transaction." *Kousisis*, 605 U.S. at 131 (cleaned up).

decided that the S.J.D. program would be put on hold, *see* Am. Compl. ¶ 106, allegations made on "information and belief" do not satisfy Rule 9(b)'s heightened pleading standard for fraud claims. *See, e.g.*, *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 16 (D.D.C. 2014). Nor does Charlap satisfy this requirement by relying on information he supposedly heard thirdhand from unidentified "Georgetown Law insiders who spoke off the record" that "discussions and the idea to suspend the S.J.D. program have started to be contemplated from around April 2021." Am. Compl. ¶¶ 48, 51. Such rank speculation does not satisfy the heightened requirement that plaintiffs pleading fraud must "invest the complaint with indicia of reliability." *Phone Recovery Servs., LLC v. Verizon Wash., DC, Inc.*, 191 A.3d 309, 322 (D.C. 2018) (quoting *United States ex rel. Heath v. AT&T, Inc*, 791 F.3d 112, 123 (D.C. Cir. 2015)).

Regardless, it is not enough to allege that ***Georgetown*** knew that the S.J.D. program would be put on hold; Charlap must allege facts plausibly demonstrating that the particular administrators who made the statements knew they were false. *See, e.g.*, *Jacobs v. Dist. Unemployment Comp. Bd.*, 382 A.2d 282, 287 (D.C. 1978) (requiring "knowledge of the falsity" by "the particular individual charged with the fraud"); Restatement (Second) of Torts § 526 (explaining personal requirement of scienter). Because Charlap has failed to allege that administrators knew that their statements made in 2018 and 2021 were then false, he fails to satisfy the knowledge requirement for a fraudulent misrepresentation claim (as Judge Oler previously ruled). *See* Feb. 5, 2026 Order at 6 (ECF No. 1-23) ("Plaintiff has made no assertions that at the time of either of these events, Defendant or its administrators were aware that the S.J.D. program would be put on hold.").

Charlap does not allege that the later representations were knowingly false either. Charlap's own allegations establish that the professors responded to his request for advice and merely expressed their "confidence" in the future of the program. Charlap does not allege that

they possessed some superior knowledge of future events and knew they were deceiving him. *See id.* Again, for this separate reason, Charlap's claims fail.

A claim for negligent misrepresentation does not require pleading knowledge of falsity (like a claim for fraudulent misrepresentation does), but it still requires the other elements of fraudulent misrepresentation, including a demonstration that a false statement was made. *Sundberg*, 109 A.3d at 1130. Charlap tries to account for this, arguing that even if administrators did not knowingly make a false statement about the status of S.J.D. admissions, Georgetown had a legal "duty to disclose the accurate status of the S.J.D. program when publishing information for the general public." Am. Compl. ¶ 127. He tries to support that otherwise inappropriately conclusory assertion by pointing to two statutes, the Higher Education Act, 20 U.S.C. § 1092, and the District of Columbia Education Licensure Commission Act of 1976, D.C. Code § 38-1301 *et seq*. Even by his own allegations, however, neither statute imposes a duty on universities to proactively update alumni of the application status for each of their degree programs. *See* Am. Compl. ¶¶ 55–62. And, again, he identifies no false statements that Georgetown made.

***Reliance and Damages.*** Charlap generally alleges that in enrolling in the LL.M. program he relied on the fact that an LL.M. degree is a prerequisite to applying for the S.J.D. program. He fails, however, to identify any false statement on which he relied. Under Rule 9's heightened-pleading obligation, he cannot generally allege that he relied on unidentified statements made during the Zoom informational meeting without explaining precisely what was said and how he relied on it. Charlap also has not alleged any facts tracing damages to any false statement on which he allegedly relied. He alleges that Georgetown's representations induced him to apply to its LL.M. program. *See* Am. Compl. ¶ 149. But he successfully completed that program and earned the degree.

### 2. Georgetown's Student Handbook and website do not support a misrepresentation claim.

Charlap next claims that Georgetown's website and Student Handbook "represented that it still has an S.J.D. program." *Id.* ¶ 112. He does not, however, allege that any such representation was false. More to the point, Charlap does not allege that Georgetown does not "still [have] an S.J.D. program." *Id.* The S.J.D. program is a five-year program. *Id.* ¶ 21. The law does not require Georgetown to remove all references to its S.J.D. program while students are still enrolled in the program simply because it is not welcoming ***new*** S.J.D. applicants. *See id.* at 21.

Nevertheless, as early as November 27, 2022, Georgetown publicly represented on its website in bold lettering that: "**The S.J.D. program is currently full. We will not be accepting new applications for Fall 2023.**" *See* **Ex. B**. By September 2023, Georgetown had updated the website to reflect that Georgetown was not accepting applications for fall 2024, and by October 2024 Georgetown had represented that it would not be accepting applications for fall 2025. *See* **Ex. C**, **Ex. D**. Thus, Charlap's claim that Georgetown's website deceived him is unsupported by the website itself. *See Davis v. World Sav. Bank, FSB*, 806 F. Supp. 2d 159, 172 (D.D.C. 2011) ("[W]hen the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail." (quoting *Miller v. Pacific Shore Funding,* 224 F.Supp.2d 977, 984 n. 1 (D. Md. 2002))). Georgetown may continue to operate its five-year S.J.D. program, and to offer information about that program on its website, without admitting new students each year, and without engaging in fraud.

As for Georgetown's Student Handbook, the University expressly reserves the right to "update its policies, procedures, admissions requirements, curriculum, course offerings and requirements, . . . graduation or degree requirements, . . . and resources and programming offered to students at any time for any reason." Am. Compl. Ex. B (Student Handbook) at iii (ECF No. 1-

46).[8] It also expressly states that the Student Handbook "applies to current students," not to alumni like Charlap. *Id.*; *see also* Am. Compl. ¶¶ 28–32 (relying on the 2024–25 Handbook despite graduating from the LL.M. Program in May 2022). Accordingly, even if Charlap could identify a false statement in the Student Handbook—which he has not done—Georgetown did not represent anything ***to Charlap*** in the Student Handbook.

**B. Charlap Fails to State a Lanham Act Claim (Count III).**

Charlap's Lanham Act claim fails the two-part statutory standing test the Supreme Court established in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–34 (2014). A plaintiff must show both: (1) that his alleged injury falls within the Act's "zone of interests"; and (2) that the injury was "proximately caused" by the defendant's false advertising. *Id.* Charlap's false advertising claim fails both threshold requirements.

***First***, Charlap's alleged injury is not within the Act's zone of interests. Lanham Act standing does not depend on whether Charlap labels himself a "business" or a "consumer"; ***it depends on the nature of the injury alleged***, which must be an injury to a "commercial interest in reputation or sales," not a purchaser's dissatisfaction with what he bought. *Lexmark*, 572 U.S. at 131–32; *Lewis v. Acuity Real Est. Servs., LLC*, 63 F.4th 1114, 1118 (6th Cir. 2023) ("[I]t is the nature of the *injury*, (not the nature of the *plaintiff*) that matters [to determine *Lexmark* standing]." (emphasis in original)) (citing *Lexmark*, 572 U.S. at 131–32). Both individual consumers and businesses "hoodwinked into purchasing a disappointing product" fall outside the Act's protection. *Lexmark,* 572 U.S. at 132 ("Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis."); *Lewis*, 63 F.4th at 1119 (realtor

---

[8] Given that Charlap attaches part of the Student Handbook to his Complaint and relies on it, the Court can consider other parts without converting this motion to one for summary judgment. *See Marcelus*, 540 F. Supp. 2d at 235.

who purchased services from referral service was a customer who did not have a commercial interest for purposes of Lanham Act standing); *Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 52 (D.D.C. 2017) (purchasers of prescription drugs did not have standing under Lanham Act to bring false advertising claims against drug manufacturer).

Charlap's claim, at bottom, rests upon his dissatisfaction as a purchaser of a Georgetown LL.M. and a potential purchaser of a Georgetown S.J.D., which is not an injury to a commercial interest in reputation or sales under the Lanham Act. *Lewis*, 63 F.4th at 1119–20; *see* Am. Compl. ¶ 141. Charlap confirms this by listing payments he made to Georgetown as his false advertising damages. Am. Compl. ¶ 147(a). Where, as here, a false-advertising plaintiff seeks to recover payments he personally made to the defendant (as opposed to, say, the value of lost product sales),[9] there is no doubt his claim is based on his purchase dissatisfaction rather than any commercial injury to reputation or sales. *Lewis*, 63 F.4th at 1119.

Charlap's attempt to recast himself as a "competitor" in the "academic marketplace" does not bring him into the Lanham Act's zone of interests. Am. Compl. ¶¶ 136–138. Charlap does not claim that Georgetown—the alleged false advertiser—competes with him for sales, reputation, or business. Instead, he alleges that he competes with other legal scholars, including Georgetown's own S.J.D. graduates, for academic jobs. *Id.* ¶¶ 138, 147(c). His self-styled "competitive disadvantage" relative to unnamed scholars is the same purchase-related harm (*i.e.*, his failure to receive the academic credential he wanted) relabeled as a commercial one. Charlap therefore fails to plead that he falls within the zone of interests protected by the Lanham Act.

---

[9] Charlap's demand for "lost future earnings" (Am. Compl. ¶ 147(b)) is insufficient because he admits this is merely the salary differential he would expect if he had actually earned an S.J.D., not the value of sales he lost to his customers as a proximate result of Georgetown's website advertisement.

***Second***, Charlap's claim also fails because he does not allege proximate cause—the second, independent element of Lanham Act standing. A Lanham Act plaintiff must allege "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which occurs "when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark,* 572 U.S. at 133. An injury does not flow directly from the alleged deception where there is a "discontinuity" between the two, such that the injury could just as easily be attributed to other causes. *Id.* at 140. Charlap does not allege, for example, that any client hired a different lawyer because of Georgetown's website. Charlap does not allege that anyone has declined—or will decline—to hire him because Georgetown's website references its S.J.D. program. Charlap's asserted harm does not flow directly from, and therefore was not proximately caused by, any advertising by Georgetown.

In short, Charlap does not plead facts showing that Georgetown's advertisement of its S.J.D. program on its website damaged Charlap's reputation or sales. Because Charlap's Lanham Act claim satisfies neither prong of the statutory standing test, his attempt to add it is futile as a matter of law.

### C. Charlap Fails to State a Claim for Breach of Contract (Count IV).

#### 1. Charlap fails to state a claim for breach of express or implied-in-fact contract.

To state a claim for breach of contract, Charlap must plausibly allege: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. *See May v. River E. at Grandview*, 322 A.3d 557, 572 (D.C. 2024). He must allege facts establishing the existence of "an enforceable contract," which requires the parties to: (1) express an intent to be bound; (2) agree to all material terms; and (3) assume mutual obligations. *Dyer v. Bilaal*, 983 A.2d 349, 356 (D.C. 2009).

If no express contract exists, Charlap must allege facts showing (1) he rendered valuable services (2) for Georgetown (3) which Georgetown accepted, used, and enjoyed (4) under circumstances that placed Georgetown on notice that Charlap expected to be paid. *See Boyd v. Kilpatrick Townsend & Stockton*, 164 A.3d 72, 81 (D.C. 2017). As for his implied-in-fact contract claim, Charlap does not allege that he performed any services for Georgetown, which Georgetown accepted under circumstances putting Georgetown on notice that Charlap expected to be paid for such services. *See Boyd*, 164 A.3d at 81. Rather than allege facts showing that he and Georgetown "took on a mutual obligation regarding [Charlap's] ability to apply to the S.J.D. program," Charlap merely laments that "***he*** would never have enrolled in [Georgetown's] LL.M. program" had he known that the University would later pause admissions for the S.J.D. program because the S.J.D. was "the degree he was really pursuing." Feb. 5, 2026 Order at 17–18 (ECF No. 1-23); Am. Compl. ¶¶ 156–57 (emphasis added). Judge Oler dismissed Charlap's previous breach of contract claim for precisely the same reason: Charlap does not plausibly allege "that there was a meeting of the minds that Plaintiff was only entering the LL.M. program (and that Georgetown was enrolling him into the program) on the condition that he would be able to later apply to the S.J.D. program." Feb. 5, 2026 Order at 17 (ECF No. 1-23).

Charlap fails to identify any terms of his contract with Georgetown, let alone one Georgetown breached. *See St. Peter v. Georgetown Univ.*, 707 F. Supp. 3d 17, 24 (D.D.C. 2023) (dismissing a Georgetown student's lawsuit for failing to clearly allege the terms of the contract); *Moree v. Georgetown Univ.*, No. 25-1415, 2025 WL 2029806, at *7 (D.D.C. July 21, 2025) (holding that Georgetown's student handbook was likely not an enforceable contract and denying student's motion for TRO because student failed to identify "an explicit contractual term"). He alleges that the contract was formed "by enrolling in [Georgetown's] LL.M. program." Am.

Compl. ¶ 153. Although an LL.M. is a prerequisite for an S.J.D., *see* Am. Compl. ¶ 66, and although Professor Voland suggested that Charlap could postpone his S.J.D. application in response to Charlap's inquiry about deferral, *see* Am. Compl. ¶ 85, Charlap fails to allege any facts suggesting that the parties had a meeting of the minds that enrollment in the LL.M. guaranteed the ability to apply to and enroll in the S.J.D. program. In fact, the Amended Complaint establishes that Georgetown expressly disclaimed that S.J.D. admission was guaranteed. *See* Am. Compl. Ex. A (S.J.D. Degree Webpages) (informing students that "[S.J.D.] [a]dmission is contingent on the availability of a full-time faculty member to serve as supervisor for the dissertation").

"For a contract to be enforceable" under D.C. law, "each party must undertake to do something the party otherwise is under no legal obligation to do, or to refrain from doing something the party has a legal right to do." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1003 (D.C. 2008) (citation modified). To the extent Charlap claims he entered into a contract with Professor Voland, he does not allege that either party "assume[d] mutual obligations" in his conversation with her. *Dyer*, 983 A.2d at 356. In short, a professor's advice in response to a student's question does not constitute a contract.

Charlap relies on other conclusions that are unsupported by his own factual assertions. For example, he claims, in a conclusory manner, that Georgetown "assur[ed] him that completing the LL.M. would allow [him] to later apply to the S.J.D. program" and that admission to the LL.M. program was "condition[ed]" on Georgetown "enabl[ing]" him to apply to the S.J.D. program. Am. Compl. ¶¶ 156–57. But he does not identify anyone who "assured him" that completing the LL.M. would allow him to apply for and gain admission to the S.J.D. program; rather, earning an LL.M. degree is merely a prerequisite for earning an S.J.D. Likewise, he does not allege a meeting of the minds that he would enroll "on the condition that [Georgetown] would enable [him] to [be

admitted to] the S.J.D. program." *Id.* ¶ 157. The Court should disregard Charlap's conclusions that are unsupported by his factual assertions. *See Iqbal*, 556 U.S. at 678 (explaining that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Twombly*, 550 U.S. at 555)).

Insofar as Charlap relies on the Student Handbook, it simply does not constitute a contract. The Student Handbook expressly states that it "is not a contract" and Georgetown reserved for itself the right to modify the handbook unilaterally at any time. *See* Am. Compl. Ex. B (Student Handbook) at iii. And, as previously discussed, the Student Handbook referenced by Charlap pertains only to current students. Accordingly, because Georgetown manifested its intent ***not*** to be contractually bound by the Student Handbook, Charlap cannot now attempt to enforce it as if it were a binding contract. *See Grove v. Loomis Sayles & Co., L.P.*, 810 F. Supp. 2d 146, 149 (D.D.C. 2011) ("[A] handbook is not enforceable as an employment contract if it disclaims the establishment of contractual obligations . . . ."); *see also Thomas v. Whitcomb*, No. 3:22-cv-10356, 2025 WL 863058, at *10 (D. Mass. Mar. 19, 2025) (collecting cases for the same proposition applicable to student handbooks); *Moree*, 2025 WL 2029806, at *7 (applying these principles to the Georgetown School of Medicine's Student Handbook).

Additionally, the statute of frauds bars enforcement of alleged contracts that cannot, by their terms, be performed within one year, unless the contract is memorialized in writing. *See* D.C. Code § 28-3502. Charlap alleges that Georgetown's LL.M. program is one year long, Am. Compl. ¶ 13, and the S.J.D. program is five years long, Am. Compl. ¶ 21. Even if Georgetown had orally contracted with Charlap in August 2021 to permit him to apply to the S.J.D. program the next year (which, to be clear, he does not allege), such a contract, by its very terms, could not be performed within one year. Any such oral contract would be barred by the statute of frauds. *See, e.g.*,

*Hairston v. S. Methodist Univ.*, 441 S.W.3d 327, 335 (Tex. App. 2013) (applying statute of frauds to bar student's claim for university scholarship because the student accepted the offer as a high school sophomore and the contract could not be performed until she graduated high school); *Davies v. Martel Lab'y Servs., Inc.*, 189 Ill. App. 3d 694, 698 (1989) (explaining that an oral contract for permanent employment contingent on completing two-year MBA degree would be barred by the statute of frauds).

**2. Charlap does not state a claim for breach of the implied covenant of good faith and fair dealing.**

Every contract contains an implied covenant of good faith and fair dealing. *See CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1246 (D.C. 2024). To state a claim for breach of the implied covenant, a plaintiff must allege either "bad faith or conduct that is arbitrary and capricious." *Id.* Such a claim arises, for example, where one party engages in "purposeful sabotage." *Id*. Having failed to state a claim for breach of contract, though, Charlap's implied covenant claim necessarily fails. *See, e.g.*, *Richter v. Cath. Univ. of Am.*, No. 18-00583, 2019 WL 481643, at *5 (D.D.C. Feb. 7, 2019) (collecting cases); *Iyer v. Geo. Wash. Univ. Sch. of Med. & Health Scis.*, No. 24-130, 2025 WL 2192985, at *14 (D.D.C. Aug. 1, 2025) (Sooknanan, J.) (same). Moreover, Charlap does not allege any facts showing that Georgetown acted either in bad faith or arbitrarily and capriciously. To the contrary, his own allegations demonstrate that Georgetown took a measured and responsible approach to the future of its S.J.D. program. *See, e.g.*, Am. Compl. ¶ 53 (alleging that the decision to stop accepting S.J.D. applications was based on the retirement of the two faculty members responsible for administering the program); *id.* ¶ 94 (alleging Georgetown was "exploring different models for continuing the S.J.D. program," reflecting the University's measured approach to the future of the program). Accordingly, Charlap has not stated a claim for breach of the implied covenant of good faith and fair dealing.

#### 3. Charlap does not state a claim for breach of express or implied warranties.

Count IV's warranty claims fail because Charlap does not identify any "warranty"—express or implied; he merely repeats the same allegations that underlie his misrepresentation and other contract-based claims. Indeed, Judge Oler previously held as much. *See* Feb. 5, 2026 Order at 21–22 (ECF No. 1-23) (dismissing express and implied warranty claims because "[b]reach of express warranty requires the same elements as breach of contract" and Charlap "relie[d] on the same general facts as in his breach of contract claim"). Charlap asserts that he informed Georgetown in his LL.M. application that the degree "would help him in his academic career." Am. Compl. ¶ 177. But that statement is too general to put Georgetown on notice that he was enrolling in the LL.M. program specifically with the expectation of gaining admission to the S.J.D. program. And while he alleges that he told two professors that ***he viewed*** the LL.M. as a steppingstone to an S.J.D., he offers no facts to support the conclusion that Georgetown had a "common understanding" with him that once he earned an LL.M., he would be legally entitled to apply to Georgetown's S.J.D. program. *See* Am. Compl. ¶ 179. Accordingly, Charlap's warranty allegations fail to state a claim.

### D. Charlap Fails to State a Claim for Unjust Enrichment, Implied-in-Law Contract, or Quasi-Contract (Count V).

Both express and implied-in-fact contract claims are "true contract[s]"; the difference is that implied-in-fact contracts have not been committed to writing or stated orally in express terms, but rather are inferred from the parties' conduct. *Steuart Inv. Co. v. The Meyer Grp., Ltd.*, 61 A.3d 1227, 1233 (D.C. 2013). Both types of contracts require "all necessary elements of a binding agreement," which are not present here.

In Count V, Charlap seeks a refund of his LL.M. tuition or a portion thereof under an unjust enrichment theory. Am. Compl. ¶ 188. To state a claim, a plaintiff must allege that: (1) he

conferred a benefit on the defendant; (2) the defendant retained that benefit; and (3) the defendant's retention of the benefit was unjust under the circumstances. *See News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005). Charlap claims that he conferred a benefit on Georgetown by paying his LL.M. tuition. *See* Am. Compl. ¶¶ 181–88. That payment entitled him to receive an academic education culminating in an LL.M. degree—precisely what Georgetown provided. *See* Feb. 5, 2026 Order at 23 (ECF No. 1-23) ("[T]he allegations in the Complaint support the conclusion that Plaintiff paid LL.M. degree and received an LL.M. degree."). Any obligation to let Charlap apply to the S.J.D. program would arise not from payment of the LL.M. tuition, but from payment of the separate S.J.D. application fee. That application fee—not the prior LL.M. tuition—would constitute the relevant benefit for any unjust-enrichment claim premised on Georgetown's alleged refusal to allow Charlap to apply to its S.J.D. program. Charlap also cannot rely on his conclusory statements that Georgetown sought to attract LL.M. students by "creating with them the expectation and reliance on the prospect of a future S.J.D. degree" and that the LL.M. program's "premium pricing reflects, in part, its status as an institution offering . . . the S.J.D." Am. Compl. ¶¶ 183, 188. Neither of these speculative assertions is accompanied by sufficient factual enhancement to render them plausible.

Because Charlap bases his claim solely on tuition paid for a degree program that he received, his unjust-enrichment claim fails as a matter of law.

### E. Charlap Fails to State a Claim for Promissory Estoppel (Count VI).

Charlap finds no stronger footing with his promissory estoppel claim. To state a claim for promissory estoppel, a plaintiff must allege: (1) a promise; (2) reasonable reliance on the promise resulting in injury; and (3) detriment such that injustice can be avoided only by enforcement. *Mamo v. D.C.*, 934 A.2d 376, 386 (D.C. 2007). "And 'though a promise need not be as specific

and definite as a contract, it must still be a promise with definite terms on which the promisor would expect the promisee to rely.'" *Gupta v. 2nd Wave LLC*, No. 23-3647, 2026 WL 147840, at *12 (D.D.C. Jan. 20, 2026) (Sooknanan, J.) (quoting *In re U.S. Off. Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 73 (D.D.C. 2003)).

Charlap fails on the first element. The "promises" Charlap identifies—general information about program prerequisites and advice on how to be a competitive applicant—are merely informative descriptions of prerequisites for the S.J.D. degree and general advice. General advice about how to position oneself as a competitive applicant for a particular degree program is not a promise that the program will remain available indefinitely. Georgetown never promised Charlap—in either a colloquial sense or a legally-binding one—that the S.J.D. program would remain available to him permanently so long as he earned his LL.M. from Georgetown. Absent a promise that could be enforced through specific performance, his promissory estoppel claim fails as a matter of law. Moreover, promissory estoppel requires ***reasonable*** reliance, and no reasonable person would rely on general academic advising as a guarantee that a program would remain available indefinitely. For all of these reasons, Count VI is not viable.

## V. CONCLUSION

For all the reasons stated above, Georgetown requests that the Court dismiss Plaintiff's Amended Complaint.

**GEORGETOWN UNIVERSITY**
*By Counsel*

*/s/ John E. Thomas, Jr.*

John E. Thomas, Jr. (DC Bar No. 1049100)
**McGuireWoods LLP**
1750 Tysons Boulevard, Suite 1800
Tysons, Virginia 22102-4215
Tel: (703) 712-5000
Fax: (703) 712-5050
jethomas@mcguirewoods.com

Brandon K. Wharton (DC Bar No. 90022982)
**McGuireWoods LLP**
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
Tel: (410) 659-4400
Fax: (410) 659-4599
bwharton@mcguirewoods.com

Sarah K. Wake (*pro hac vice* forthcoming)
**McGuireWoods LLP**
77 West Wacker Drive, Suite 4100
Chicago, Illinois 60601-1818
Tel: (312) 849-8238
Fax: (312) 698-4538
swake@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I certify I filed the foregoing on August 14, 2026, via CM/ECF system and, per agreement with Plaintiff, served a copy via electronic mail on:

Uriel Charlap
10937 Pebble Run Drive
Silver Spring, Maryland 20902
(301) 814-7374
urielc88@gmail.com
*Pro Se Plaintiff*

*/s/ John E. Thomas, Jr.*

John E. Thomas, Jr. (DC Bar No. 1049100)
**McGuireWoods LLP**
1750 Tysons Boulevard, Suite 1800
Tysons, Virginia 22102-4215
Tel: (703) 712-5000
Fax: (703) 712-5050
jethomas@mcguirewoods.com

# EXHIBIT A

interested to be an SJD student as well.

Thank you very much,
Uriel

On Mon, Jan 24, 2022 at 9:00 PM Caryn Voland
<Caryn.Voland@law.georgetown.edu> wrote:

> Dear Uriel,
>
> Professor Freeman asked me to follow up with you about your question about applying for Fall 2022 but deferring admission, if offered, to Fall 2023 for the SJD program.
>
> If you think you may enroll in Fall 2022, then you should apply for Fall 2022 and if you are admitted but your plans change and you can't enroll until Fall 2023, it is possible to request a deferral. However, it might not be possible to grant a deferral for the SJD because it depends on the availability of a supervisor for the dissertation project, who may agree to be available for a Fall 2022 admission but might not be available in 2023. It also might not be possible to defer any financial assistance received for one year into the next year. Therefore, if your plan is really to start in Fall 2023, it is better to apply specifically in that application cycle, for the year in which you actually want to begin.
>
> I hope that helps.
>
> Sincerely,
> Caryn
>
> **Caryn M. Voland** | Assistant Dean, Graduate Admissions
> GEORGETOWN LAW | cmv26@georgetown.edu
> Pronouns: She/Her/Hers
> 600 New Jersey Avenue, N.W. | Washington, D.C. 20001
> Phone: 202.662.9010
> **Website** | **Facebook** | **Twitter** | **YouTube** | **LinkedIn** | **Instagram** |
>
> On Fri, Jan 21, 2022 at 1:23 PM Alexa Freeman
> <apf5@georgetown.edu> wrote:
>
>> Hi Uriel,

Thank you for your letter. It’s always wonderful when one of our LL.M. students expresses interest in the SJD Program!

I don’t have a ready answer to your question. It’s not one we’ve confronted before. I’ve asked others on the admissions committee for their views and one of us will get back to you.

Btw, the other recipient of your email is unknown to me.

Have a nice weekend and continued good luck with your LL.M. studies!

Best,

Professor Freeman

Alexa P. Freeman
Visiting Professor of Law and Director, S.J.D. Program
Georgetown University Law Center
apf5@law.georgetown.edu
Pronouns: she/her

On Jan 20, at 8:31 PM, Uriel Charlap <uc26@georgetown.edu> wrote:

Dear Professor Freeman,

My name is Uriel Charlap. Currently, I am an LLM student at Georgetown Law.

I am considering applying for the SJD program. Assuming that a letter of admission to the program is granted, is it possible to defer the studies to the following year?

Best,
Uriel Charlap

Virus-free. www.avg.com

# EXHIBIT B

# S.J.D. Applicants

**The S.J.D. program is currently full. We will not be accepting new applications for Fall 2023.**

The S.J.D. program is only open to applicants who currently possess an LL.M. degree from the United States. Exceptionally, Georgetown will also accept applications from candidates with an LL.M. from another common law country (i.e. UK, Canada, or Australia).

Admission is based upon the applicant's academic qualifications, scholarly potential, dissertation topic and the availability of a full time faculty member willing to supervise the applicant throughout the program. There is no limit to the topics that students may consider as long as they are original, able to contribute to the production of new legal knowledge and pursued with academic rigor.

The application must be supported by outstanding recommendations from a law professor from the applicant's home country and from a professor familiar with the applicant's LL.M. work or teaching experience. Finally, the applicant must have excellent English language writing and speaking ability, as demonstrated by achieving the requisite TOEFL score.

ADDITIONAL S.J.D. INFORMATION

S.J.D. PROGRAM PAGE

LL.M. & CERTIFICATE APPLICANTS
S.J.D. APPLICANTS
NON-LAWYER APPLICANTS
J.D./LL.M. APPLICANTS
DUAL DEGREE APPLICANTS
SCHOLARSHIPS & FELLOWSHIPS
CHECK APPLICATION STATUS

# EXHIBIT C

INTERNET ARCHIVE WayBackMachine https://www.law.georgetown.edu/admissions-aid/graduate-admissions/sjd/ 91 captures JUN SEP DEC 25 2022 2023 2024



# S.J.D. Applicants

The S.J.D. program is currently full. We will not be accepting new applications for Fall 2024.

The S.J.D. program is only open to applicants who currently possess an LL.M. degree from the United States. Exceptionally, Georgetown will also accept applications from candidates with an LL.M. from another common law country (i.e. UK, Canada, or Australia).

Admission is based upon the applicant's academic qualifications, scholarly potential, dissertation topic and the availability of a full time faculty member willing to supervise the applicant throughout the program. There is no limit to the topics that students may consider as long as they are original, able to contribute to the production of new legal knowledge and pursued with academic rigor.

The application must be supported by outstanding recommendations from a law professor from the applicant's home country and from a professor familiar with the applicant's LL.M. work or teaching experience. Finally, the applicant must have excellent English language writing and speaking ability, as demonstrated by achieving the requisite TOEFL score.

ADDITIONAL S.J.D. INFORMATION

S.J.D. PROGRAM PAGE

# EXHIBIT D

https://web.archive.org/web/20241004183822/https://www.law.georgetown.edu/admissions-aid/graduate-admissions/sjd/
91 captures
APR OCT NOV 04 2023 2024 2025



# S.J.D. Applicants

## The S.J.D. program is not accepting new applications for Fall 2025.

The S.J.D. program is only open to applicants who currently possess an LL.M. degree from the United States. Exceptionally, Georgetown will also accept applications from candidates with an LL.M. from another common law country (i.e. UK, Canada, or Australia).

Admission is based upon the applicant's academic qualifications, scholarly potential, dissertation topic and the availability of a full time faculty member willing to supervise the applicant throughout the program. There is no limit to the topics that students may consider as long as they are original, able to contribute to the production of new legal knowledge and pursued with academic rigor.

The application must be supported by outstanding recommendations from a law professor from the applicant's home country and from a professor familiar with the applicant's LL.M. work or teaching experience. Finally, the applicant must have excellent English language writing and speaking ability, as demonstrated by achieving the requisite TOEFL score.

**ADDITIONAL S.J.D. INFORMATION**

S.J.D. PROGRAM PAGE





GEORGETOWN LAW 600 NEW JERSEY AVENUE NW / WASHINGTON DC 20001 / 202.662.9000